CHAPMAN v. HUNT.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

No. 39.

1. BANKRUPTCY ⬤⇒161(2)—PREFERENCES—TRANSFER.
    Where a corporation, solvent at the time a stockholder and director severed his connection, agreed to assign outstanding accounts receivable to secure him against loss by virtue of his accommodation indorsement of notes of the corporation, *held*, though the corporation became insolvent nearly a year later, and the holder and accommodation indorser, when the agreement was performed, had reasonable cause to believe the corporation insolvent, the agreement was not invalid, nor was the performance of it obnoxious to the Bankruptcy Act.

2. BANKRUPTCY ⬤⇒161(2)—PREFERENCES—WHAT ARE.
    Where a corporation, while solvent, agreed to protect a stockholder, who severed his connection therewith, against loss by virtue of his accommodation indorsement of corporate notes, by assigning accounts to him and to execute further papers for that purpose, and corporation, after it became insolvent and within a month of bankruptcy, paid notes, so indorsed, with funds largely advanced by the indorser, and deposited new accounts as security, *held*, the transaction must be deemed a consummation of the earlier agreement, and not an independent transaction, open to attack under Bankruptcy Act, §§ 60, 67 (Comp. St. §§ 9644, 9651), as preferential, or as working fraud on creditors.

Appeal from the District Court of the United States for the Northern District of New York.

Suit by George D. Chapman, as trustee in bankruptcy of the Syracuse Candy Works, Incorporated, against Edward A. Hunt. From a decree for complainant (248 Fed. 160), defendant appeals. Reversed and remanded, with directions.

Levi S. Chapman, of Syracuse, N. Y. (Chapman, Newell & Crane, of Syracuse, N. Y., of counsel), for appellant.

Lee & Brewster, of Syracuse, N. Y., for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. George D. Chapman, trustee in bankruptcy of the Syracuse Candy Works, Incorporated, filed a bill in equity against Edward A. Hunt, praying that he be decreed to hold in trust for the complainant certain moneys collected by him upon accounts receivable assigned to him by the Candy Works.

January 13, 1915, Hunt, who had been an incorporator, director, and stockholder of the Candy Works, ceased all connection therewith and was given a written agreement with the Candy Works, which was then entirely solvent as follows:

The Candy Works assigned to Hunt good outstanding accounts receivable to the amount of $6,000 to secure Hunt against loss by virtue of his accommodation indorsement of its notes held by the City Bank of Syracuse for $9,100 and any renewals thereof. It was further agreed that this should be a continuing collateral security, and that to such end the treasurer of the Candy Works should collect the

assigned accounts for Hunt and turn over the proceeds to the Candy Works for use in its business, upon assigning to Hunt an equal amount of new accounts, so that he should always be secured in the sum of $6,000. A list of assigned accounts was to be furnished him monthly, stamped as follows.:

"For value received the undersigned, Syracuse Candy Works, Incorporated, does hereby sell, assign, and transfer the within mentioned accounts to Edward A. Hunt in accordance with the terms and conditions of our agreement with said Hunt, bearing date January 13, 1915.

"Syracuse Candy Works, Inc.,
"By G. F. Rowe, President.
"Thelma M. Smith, Treasurer."

The Candy Works finally covenanted for additional assurance as follows:

"We do also agree that we will execute any other or further papers or agreements that may be necessary to carry this assignment or the assignments of any other accounts substituted for these accounts or substituted for any accounts that may be substituted for these accounts."

This agreement was carried out until April 16, 1916, when Hunt was given a list of accounts receivable aggregating $3,369.74.

[1] The Candy Works had been insolvent since December, 1915, and both Hunt and the City Bank had reasonable cause to believe it to be so throughout the month of April, 1916. This, however, did not make the agreement of January 13, 1915, invalid, or the performance of it by the Candy Works obnoxious to the requirements of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544). Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995. And so the District Judge held.

[2] April 18, 1916, when only one of the Candy Works' notes held by the City Bank was due, an arrangement was made between it, Hunt, and the Candy Works that all the notes should be taken up. To this end Hunt gave the Candy Works his check for $8,600, with which funds and others in the hands of the Candy Works all the outstanding notes indorsed by Hunt, then aggregating $9,100, were taken up; the Candy Works giving Hunt its own demand note for $8,600, and under a written agreement of that date assigning to him accounts theretofore assigned to the amount of $1,003.56 under the agreement of January 13, 1915, together with new accounts amount-to $1,998.62, or $3,002.18 in all, as collateral security for its demand note to him of $8,600.

May 13, 1916, an involuntary petition in bankruptcy was filed against the Candy Works and an adjudication followed. The District Judge held that the transaction of April 18, 1916, was an entirely new and independent one, constituting a transfer within four months of the filing of the petition to Hunt, a creditor by virtue of his indorsement, who knew the Candy Works was insolvent, voidable by the trustee as a preference under section 60b (Comp. St. § 9644), and also void as a fraud upon creditors under section 67e of the Bankruptcy Act (Comp. St. § 9651). We cannot so regard it. It was, indeed, a new writing of a new date, but more in pursuance of the Candy Works' covenant of further assurance than as a new and independ-

ent contract. Hunt, because of his liability as indorser, took up the Candy Works' notes, not directly from the bank, but to the extent of $8,600 through the Candy Works. Its demand note to him for $8,-600 was only the measure and evidence of the loss he sustained by virtue of his accommodation indorsements. The security he received was the same as he had been entitled to since January 13, 1915. He could perfectly well have acted without any further writing at all, and we think he should not be deprived of his security because of this wholly unnecessary circuity of action. The writing should be read in the light of the foregoing history and of all the circumstances. The intention of the parties is to be discovered. It cannot be supposed that they intended to make any substantial change in their relations.

The decree of the District Court must be modified in the following respects: Hunt is entitled to retain the proceeds of all the accounts assigned to him under the writing of April 18, 1916, which he has received, and to recover from the trustee the proceeds of such accounts as he has not received, which can be traced into the funds in the hands of the trustee, and, when these amounts have been ascertained, to be permitted to file his claim for the balance due him.

The decree is reversed, and the cause is remanded to the District Court, with instructions to enter a decree in accordance herewith.