### ATHERTON et al. v. BEAMAN.

(Circuit Court of Appeals, First Circuit. April 15, 1920.)

No. 1417.

1. **Corporations ☞153—Informal distribution of profits not recoverable.**
   Where two persons owned all the stock of the corporation, except one share, the beneficial interest in which was in one of them, and the corporation was solvent, dividends paid to them without any vote of the directors authorizing the payment could not be recovered.

2. **Courts ☞365—Question of pledge a local question.**
   The extent and validity of a pledge are local questions.

3. **Pledges ☞11—Acceptance of order by warehouseman a sufficient delivery.**
   In Massachusetts, acceptance of an order on a warehouseman is a sufficient delivery of goods in pledge to the holder of the order, and the warehouseman may become the bailee or custodian for the pledgee.

4. **Pledges ☞11—Designation or identification of property necessary.**
   Where, as security for a loan, the debtor gave an order on a storage company to place 50 cars of the lumber which it had on storage subject to the creditor's order, with the right to the debtor to use any lumber so long as it substituted other cars, so that there would always be 50 cars subject to the creditor's order, there was no valid pledge, without some designation or identification of the lumber held for the creditor.

5. **Bankruptcy ☞161(2)—Delayed designation of property pledged sufficient.**
   Where, to secure a loan, a debtor gave a creditor an order on a storage company, requiring it to hold 50 cars of the lumber stored with it for the creditor, and the storage company accepted the order, a delay of over two years, and until shortly before the debtor's bankruptcy, in designating the lumber held for the creditor did not prevent the pledge becoming effectual as to the lumber designated, there being no fraud in the transaction, as the designation related back to the date of the order.

6. **Pledges ☞11—Order on bailee to set apart 50 carloads of lumber did not prevent designation of lumber not in carload lots.**
   Where, to secure a loan, a debtor gave a creditor an order on a storage company, directing it to place 50 cars of the lumber stored with it subject to the order of the creditor and hold it for him, and to keep a suffi-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cient number of cars at a specified average value to equal the loan, the term "carload lots" was a mere matter of form, and did not prevent the setting apart for the creditor of lumber not separated into carload lots.

**7. Bankruptcy ⬦188(1)—Designation of property by bailee ratified by debtor and creditor.**

> Where a debtor gave a creditor an order on a storage company to place a specified quantity of the lumber stored with it to the order of the creditor and hold it as security for him, both parties *held* to have ratified and approved the designation by the storage company of lumber held for the creditor prior to the filing of a petition in bankruptcy against the debtor.

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Suit by Percy A. Atherton and others, trustees in bankruptcy of the Parsons Manufacturing Company, against Nathaniel P. Beaman. From a decree for defendant (256 Fed. 871), plaintiffs appeal. Affirmed.

Lee M. Friedman, of Boston, Mass. (Friedman & Atherton, of Boston, Mass., on the brief), for appellants.

William D. Turner, of Boston, Mass. (Reginald Foster, George Hoague, and Foster & Turner, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is an appeal from the final decree in a bill in equity brought by the appellants as trustees in bankruptcy of the Parsons Manufacturing Company, a Massachusetts corporation, organized in 1898 with a capital of $10,000, which was afterwards increased to $30,000, of which $20,000 was preferred and $10,000 common stock.

In 1914 the appellee, Nathaniel P. Beaman, owned all the preferred and a large part of the common stock. The other stockholders were: Henry Gerrish, Jr., who owned ten shares of the common stock, and a brother of the defendant, who owned one share. Mr. Beaman's health was impaired, and he sold his interest in both the common and preferred stock of the company to Mr. Gerrish for the par value of the preferred stock. Mr. Gerrish interested two other parties with him in the purchase, and each of these parties paid the defendant $5,000, which was loaned by the defendant to the company, and its note taken for the same, dated September 4, 1914. For the balance of the consideration for the transfer of the stock the defendant received the notes of Mr. Gerrish, indorsed by other parties. When the note was given to the defendant by the company, it had in storage with the Eastern Storage Company at Chelsea, Mass., lumber which had been received by the Storage Company in 68 carload lots, and each carload had been piled separately in its yard and marked with a tag, which had on it the number of the car from which it had been unloaded and also the initials "P. M. Co."

To secure the defendant's loan the company gave him the following order:

---

"Eastern Storage Company, Chelsea, Mass.—Gentlemen: You will please place fifty (50) cars of the lumber which this company has on storage with you subject to the order of Nathaniel P. Beaman, who is to hold the same as collateral for security for the loan made by him to the company. The company is to have the right to use any and all cars of lumber with you, including those covered by this order, so long as it substitutes other cars for those so used, so that there shall always be on storage with you, subject to the order of said Beaman, fifty (50) cars of lumber."

This order was accepted by the Storage Company.

A written agreement was also executed by the parties in which, after reciting the loan to the company, it agreed—

"to keep with the Eastern Storage Company of Chelsea a sufficient number of cars of lumber at the average value of two hundred dollars ($200) per car to equal the amount of Beaman's loan to the corporation; and said corporation has this day executed and delivered to the said Beaman an agreement placing fifty (50) cars of said lumber subject to his order."

On December 9, 1916, an involuntary petition in bankruptcy was filed against the Parsons Manufacturing Company.

The defendant filed a bill in equity in one of the superior courts of Massachusetts, asking that the Eastern Storage Company be enjoined from delivering to the trustees in bankruptcy such lumber as he claimed to hold by virtue of the above order; and the trustees filed this bill, seeking to restrain Beaman from further prosecuting his bill in equity in the state court, and asking that the right, title, and interest of the trustees in bankruptcy in and to the lumber claimed by the defendant be determined, and also that Beaman be ordered to pay over to them certain sums paid to him by Gerrish from the assets of the Parsons Manufacturing Company in part discharge of the notes given by Gerrish to Beaman. In the bill it was also alleged that the defendant, as the treasurer, director, and owner of a majority of the outstanding capital stock of the company, had caused to be paid to himself certain sums of money as dividends on stock held by him, without any vote or authorization by the stockholders of the company, and that also, while treasurer of said company, he had wrongfully and illegally permitted certain stockholders and employés of the corporation, in particular one Henry Gerrish, Jr., to withdraw large sums of money from the treasury of the company, and an accounting was prayed for.

By his answer the defendant claimed a valid lien on 50 carloads of lumber stored with the Eastern Storage Company, and admitted that, as treasurer, director, and owner of a majority of the stock of the company, he caused certain sums of money to be paid to himself as his proportionate share of the net profits of the business, but denied that such payments were wrongfully or illegally made. He also admitted that he permitted certain payments to be made to Henry Gerrish, Jr., and W. W. Crosby, but denied that said payments were wrongful or illegal, and claimed that all payments made, either to himself or to said Gerrish or Crosby, were made with the knowledge and consent of the stockholders and directors of the company and duly entered upon its books, and that the company was, at all times during which such payments were made, amply solvent, and that there are no credi-

ters represented by the plaintiffs who were injured thereby or have any right to inquire into or complain of such payments.

The case was referred to a special master, who has found that the defendant had a valid lien on the lumber claimed by him, and that the withdrawals of money by the defendant and payments made to him by Gerrish, on account of his indebtedness to Beaman, were ratified, and that there was nothing irregular in the payments made by the Parsons Manufacturing Company to the defendant of his interest on his loan to the company. The District Court has approved the master's report, except so much of the same as relates to jurisdiction, which question, because of an express waiver, has become immaterial.

[1] We think it unnecessary to discuss at length the questions raised in regard to the dividends paid to Beaman or to Gerrish, when they were the owners of all the stock of the corporation but one share, which was held by Beaman's brother, and the beneficial interest in which was in Beaman. Although there was no vote of the directors authorizing the payment of dividends, the master and the District Court have found that the company was solvent when they were made, and that their payment was the mode devised by the parties in interest for making a distribution of profits in which they alone were interested, and was ratified by the stockholders and directors. McDonald, Receiver, v. Williams, 174 U. S. 397, 19 Sup. Ct. 743, 43 L. Ed. 1022; Ratcliff v. Clendenin, 232 Fed. 61, 68, 146 C. C. A. 253. See, also, opinion of the Supreme Court of Massachusetts, dated February 27, 1920, in Beaman v. Gerrish et al., 126 N. E. 352.

In regard to the payments made to Beaman by Gerrish from funds of the company on account of the private indebtedness of the latter to the former, the District Court has found that, while the presumption is against the regularity of such payments, nevertheless—

"On all the evidence, and giving due weight to the presumption, it does not appear that, in using the funds of the Parsons Company to pay his personal debt to Beaman, Gerrish was acting in fraud of other persons interested in the company."

This finding of fact, as also that in regard to the payment of dividends, included the finding of good faith upon the part of Beaman, and we think both are fully sustained by the evidence and the inferences that may be fairly drawn therefrom.

The only other question raised by the assignment of errors is: Was Beaman's claim secured by a valid pledge of lumber? We think the following language of the court in Barnes v. Alexander, 232 U. S. 117, 120, 34 Sup. Ct. 276, 277 (58 L. Ed. 530), is applicable to the situation presented here:

"We start, however, with the principle that an informal business transaction should be so construed as adopting whatever form, consistent with the facts, is most fitted to reach the result seemingly desired."

The result desired by the parties in the present case was to secure Beaman for his loan to the company, and also to allow the company to use the lumber pledged as it might need it, provided it substituted other lumber equal in amount and value. The Storage Company be-

came the agent of both parties by its acceptance of the order, and agreed to hold 50 carloads of lumber for Beaman, or, if payments were made on account of his loan, to hold sufficient lumber to cover the balance, deducting one carload for each $200 that might be paid; and there was testimony that it did not accept any other orders until it was certain that it could do so after setting apart 50 carloads of lumber to be held as security for Beaman. We also start with the finding of the court that the whole transaction was entered into and carried out in good faith, and that there are no intervening claims whose priority is disputed by Beaman, and that no one, except the trustees of the Parsons' Company, contests the right of Beaman to hold the lumber which he claims as security for his loan.

The District Court has found that no specific carloads or piles of lumber were appropriated by the Storage Company to the pledge until November, 1916, shortly before the petition in bankruptcy was filed; that at the time the order was given to Beaman by the Parsons Manufacturing Company the company was solvent, but that in November, 1916, it was insolvent.

[2] The extent and validity of a pledge are local questions. Hiscock v. Bank, 206 U. S. 28, 27 Sup. Ct. 681, 51 L. Ed. 945; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956.

[3] Under the decisions of the Supreme Judicial Court of Massachusetts acceptance of an order is sufficient delivery of goods in pledge to the holder of the order, and the warehouseman by whom the order has been accepted may become the bailee or custodian for the pledgee. Jones v. Baldwin, 12 Pick. (Mass.) 316; Carter v. Willard, 19 Pick. (Mass.) 1; Boardman v. Spooner, 13 Allen (Mass.) 353, 357, 90 Am. Dec. 196; Cushing v. Breed, 14 Allen (Mass.) 376, 92 Am. Dec. 777; Forbes v. Fitchburg R. R. Co., 133 Mass. 154; Clark v. Williams, 190 Mass. 219, 76 N. E. 723; Hallgarten v. Oldham, 135 Mass. 1, 46 Am. Rep. 433; Hall et al. v. Boston & Worcester R. R. Co., 14 Allen (Mass.) 439, 92 Am. Dec. 783. These decisions are in accord with those of the federal courts. See Union Trust Co. v. Wilson, 198 U. S. 530, 538, 25 Sup. Ct. 766, 768 (49 L. Ed. 1154), where the court said:

"Still all the authorities agree that, if an assent in advance is not enough, yet, as soon as the bailee attorns to the assignee, the delivery is complete."

When the order of September 2, 1914, was given, the Storage Company had in its possession 68 carloads of lumber belonging to the Parsons Manufacturing Company, and by its acceptance the Storage Company agreed to set aside 50 of these carloads and hold the same for Beaman. Sumner v. Hamlet, 12 Pick. (Mass.) 76; Hall et al. v. Boston & Worcester R. R. Co., 14 Allen (Mass.) 439, 92 Am. Dec. 783; Bristol Mfg. Corp. v. Arkwright Mills, 213 Mass. 172, 100 N. E. 55.

[4] If it had done this when it accepted the order, there could be no doubt that the pledge would apply to the cars which had been separated from the larger number and designated as those to be held in

accordance with the terms of the order which it had accepted. Without some designation or identification of the lumber there could be no valid pledge.

[5] About November 10, 1916, however, the Storage Company did designate, by car numbers, the carload lots which it was holding as pledged to Beaman, and about a week later notified the Parsons Company by sending it a list of them.

We think the designation at this time, under an authorization which had been previously given and in fulfillment of an obligation which had been assumed by the Storage Company, made the pledge effectual as to the carload lots in its yard. The fact that this designation was not made until more than two years after the date of the order, and also within less than one month before the filing of the petition in bankruptcy, would not render the pledge invalid as against the trustees, because, in a transaction untainted with fraud, and where the rights of third parties are not affected, such designation would relate back to the date of the order. Johnson v. Root Mfg. Co., 241 U. S. 160, 165, 36 Sup. Ct. 520, 60 L. Ed. 934; Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 95, 25 Sup. Ct. 567, 49 L. Ed. 956; Ward v. First National Bank, 202 Fed. 609, 120 C. C. A. 655; Chapman v. Hunt, 254 Fed. 768, 166 C. C. A. 214; In re Harvey (D. C.) 212 Fed. 340; Sieg v. Greene, 225 Fed. 955, 959, 141 C. C. A. 79, Ann. Cas. 1917C, 1006; Sumner v. Hamlet, 12 Pick. (Mass.) 76; Copeland v. Barnes, 147 Mass. 388, 390, 18 N. E. 65.

On September 4, 1915, the Parsons Company was informed by the Storage Company that it did not have in storage enough lumber to fill the various pledge orders which had been given and which the Storage Company had been requested to accept. The Parsons Company owned at that time a cargo of lumber which had been brought by vessel to the wharf of the Hall Lumber Company at East Boston, and it gave to the Storage Company the following order:

"Chelsea, Mass., Sept. 4, 1915. The Hall Lumber Co., East Boston, Mass.— Gentlemen: We have on storage with you the cargo of one inch spruce from the Schr. Elsie A. Bayles, 226,000 feet. Please hold this subject to the orders of the Eastern Storage Company of Chelsea, until further orders or cancellation of this order by them."

The Storage Company sent this order to the Hall Lumber Company, who acknowledged its receipt by letter, so that there was a constructive delivery of this lumber to the Storage Company.

The identical lumber which was transferred to the Storage Company by the above order was at Hall's Wharf, subject to its order, in November, 1916. Upon the list of cars which the Storage Company sent to the Parsons Company, in addition to the carload lots appearing under the car numbers, it also designated and appropriated to meet the terms of the order of September 2, 1914, in favor of Beaman, which it had accepted, the 226,000 feet of lumber upon Hall's Wharf,

which was constructively in its possession. This appears from the following entry at the end of the list of cars:

"Additional at East Boston 20 carloads."

And to make it entirely certain that the Parsons Company should understand that the Storage Company had appropriated, and was holding as security for Beaman's loan, the lumber at Hall's Wharf, it wrote the Parsons Company, on the next day after it had mailed the list to it, as follows:

"In addition to cars stored on our premises, as per list of November 17, for your account, there is a cargo of box board lumber on storage at Hall's Wharf, East Boston, subject to our orders, which we consider equivalent to 20 carloads."

[6] This lumber had not been separated into carload lots; but we think the use of the term "carload lots" in the order a mere matter of form, and that the real substance of the transaction was an authorization to and agreement by the Storage Company to hold for Beaman sufficient amount of lumber to secure his claim.

Lumber is measured by the thousand feet and not by carloads. Because it came to the yard of the Storage Company usually in carload lots, the words "fifty carloads" were used to designate the amount which was to be held by the Storage Company as security for Beaman's loan; but in effect the agreement was that about 500,000 feet of lumber were to be held, as it appears from the record that, upon the average, there were about 10,000 feet of lumber in a carload, and that the company had agreed—

"to keep with the Eastern Storage Company of Chelsea a sufficient number of cars of lumber at the average value of $200 per car to equal the amount of Beaman's loan to the corporation."

Until the loan was reduced by payments, the Storage Company was required, therefore, to hold for Beaman 50 carloads, or their equivalent, 500,000 feet, of lumber.

Looking at the substance, rather than at the form, it is apparent that it was immaterial, so far as the security was concerned, whether a carload lot or an equal amount of lumber was held by the Storage Company for Beaman.

[7] Two or three days previous to the filing of the petition in bankruptcy against the Parsons Company, Beaman called upon the treasurer of the Storage Company, who told him about the lumber at Hall's Wharf. We quote the following from his testimony as it appears in the record:

"Beaman mentioned the fact that the Eastern Storage Company was supposed to hold 50 cars subject to his order, and witness told him the Storage Company had 30 cars on its own premises and a cargo that it estimated at about 20 carloads at Hall's Wharf. Beaman asked witness about the Storage Company's security on these cars—their rights to those cars—and witness explained to him that the Storage Company held an order on the Hall Lumber Company."

There was no direct evidence that Beaman at that time either assented to or dissented from an appropriation of the lumber at Hall's

Wharf to his pledge. It is evident, however, from the subsequent conduct of the parties, that he must have assented, for a few days after the filing of the petition in bankruptcy the Storage Company, at the request of Beaman's attorney, sent him a statement of the lumber which it was holding subject to Beaman's order, which included the following:

"Also 220,000 feet one-inch spruce boards stored at Hall's Wharf, considered 20 carloads."

And in the letter which accompanied this statement the Storage Company wrote that it was holding this lumber—

"subject to the order of Mr. Nathaniel Beaman from lots stored by the Parsons Manufacturing Company as per agreement of Sept. 2, 1914, to hold 50 cars."

We think that the appropriation and designation by the Storage Company, which it had made previous to its letter to the Parsons Company of November 17, 1916, acting as agent, both of the Parsons Company and of Beaman under the authority given it by the order which it had accepted, were ratified and approved by each of them before the petition in bankruptcy was filed, and that Beaman had at the time of the filing of the petition in bankruptcy a valid pledge, not only upon the 30 carloads of lumber given on the list which the Storage Company sent in its letter of November 17, 1916, to the Parsons Company, but also upon the lumber at Hall's Wharf.

The decree of the District Court is affirmed, with costs to the appellee in this court.