HOPKINS v. NATIONAL SHAWMUT BANK OF BOSTON et al. SAME v. EQUITABLE TRUST CO. OF NEW YORK. In re HEYWARD–WILLIAMS CO.*

(Circuit Court of Appeals, Fifth Circuit. October 10, 1923.)

Nos. 4130, 4131.

1. **Bankruptcy ⬳449—Order held appealable within six months.**

An order granting the petition of an intervener for delivery to it by the trustee of property on which it claimed a lien was not one allowing a claim against the estate, but one made in a controversy arising in the bankruptcy proceeding, and reviewable by appeal taken within six months, under Bankruptcy Act, § 24a (Comp. St. § 9608).

2. **Warehousemen ⬳15(3)—Pledge of blanket receipts for cotton held not to vest title in pledgee to any specific bales.**

A pledge of blanket receipts issued by a warehouse, calling for a specified number of unidentified bales of cotton, where the pledgor had a larger number in storage, held not to vest the pledgee with title to any specific bales.

3. **Bankruptcy ⬳161(1)—Lien given within four months held voidable preference.**

Where, in accordance with a course of dealing followed for many years, bankrupt pledged with banks blanket warehouse receipts for cotton, calling for a stated number of unidentified bales, which did not and were not intended to create a lien on any specific cotton, but were convertible on order of bankrupt, on surrender and cancellation, into new receipts for specific bales, such conversion constituted a new contract between pledgor and pledgee, and when made within four months prior to bankruptcy, when bankrupt was insolvent to the knowledge of the pledgees, was ineffective to create a valid lien, and constituted a voidable preference, under Bankr. Act, § 60b (Comp. St. § 9644.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Voidable.]

4. **Warehousemen ⬳15(3)—Effect of invalid pledge as creating equitable lien.**

A pledge of a blanket warehouse receipt for a certain number of unidentified bales of cotton out of a larger number of bales in storage, of various grades and values, held ineffective to create an equitable lien on any specific cotton less than the entire mass.

5. **Warehousemen ⬳15(3)—Creation of equitable lien by pledge of warehouse receipts for cotton.**

In accordance with well-established usage in the cotton trade, bankrupt, a cotton factor, delivered to banks to secure loans blanket warehouse receipts for a specified number of unidentified bales of cotton out of a larger number it had in the warehouse. Held, that the intention of the parties, and the legal effect, was to create an equitable lien in favor of each receipt holder on the entire mass of the cotton in the warehouse to the account of bankrupt, including subsequent withdrawals and substitutions, in such proportion as the number of bales named in his receipt bore to the entire number, including free and unpledged cotton; the cotton being deemed a fund for the pro rata benefit of all receipt holders.

6. **Bankruptcy ⬳188(3)—Liens held valid against trustee.**

Equitable liens, created by delivery by bankrupt, a cotton factor, more than four months prior to the bankruptcy, to secure loans, of warehouse receipts for cotton of customers, on which it had a claim for charges and advances, held good as against its trustee, though vested by Bankruptcy Act, § 47a(2), as amended (Comp. St. § 9631 [a (2)]), with the rights of an execution creditor.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 44 Sup. Ct. 231, 68 L. Ed. —.

Appeals from the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

Suit in equity by Matthew M. Hopkins, trustee in bankruptcy of the Heyward-Williams Company, against the National Shawmut Bank of Boston and others. Decree for defendant, and complainant appeals. Affirmed. Also appeal by the trustee from an order in the bankruptcy proceeding in favor of the Equitable Trust Company of New York. Affirmed.

For opinion below, see 284 Fed. 983.

Thomas F. Walsh, Jr., of Savannah, Ga. (Francis P. McIntire and Morris H. Bernstein, both of Savannah, Ga., on the brief), for appellant.

William L. Clay and Wm. W. Gordon, both of Savannah, Ga., for appellee National Shawmut Bank of Boston.

George T. Cann and Max Isaac, both of Savannah, Ga. (Anderson, Cann & Cann and Isaac & Isaac, all of Savannah, Ga., on the brief), for appellee Equitable Trust Co. of New York.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. These causes present the same questions, and are alike in their facts, with minor and unimportant exceptions. The first was a plenary suit in equity, instituted by the trustee in bankruptcy to recover the possession of certain cotton as assets of the bankrupt estate, and the appeal is from a decree dismissing the bill. The second was an intervention filed by the Equitable Trust Company in the bankruptcy proceeding, and the appeal is from the order of the District Court in favor of the intervener.

[1] In the latter appeal, there is a motion to dismiss, based upon the contention that the appeal was allowed after the lapse of 10 days from the passing of the order appealed from, and that the order was one allowing a claim, and the appeal was too late. The intervention sought the delivery to intervener of certain cotton, or the proceeds thereof, which it claimed, and the order directed the delivery to it of the cotton or proceeds. This was in no sense an order allowing a claim against the bankrupt estate. If the cotton or its proceeds had been insufficient to satisfy intervener's claim against the bankrupt, intervener would have had to file its claim, and secure its allowance, to share in the dividends. If the relief had been denied intervener, this would not have prevented its filing a claim as an unsecured creditor, and securing its allowance. Denial of relief sought by the intervention would not have been a rejection of its claim. The intervention was a controversy in bankruptcy, the time for taking an appeal from the order thereon being six months. Wuerpel v. Commercial Germania Trust & Savings Bank, 238 Fed. 269, 151 C. C. A. 285; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986.

Upon the merits the two appeals may be considered together. The facts on which they are to be determined are not in conflict, and are so concisely and completely summarized in the opinion of the District

Court that we adopt the statement as set out in the opinion of the court reported in 284 Fed. 983.

[2, 3] The question presented is whether the rights of appellees in certain cotton covered by blanket warehouse receipts, held by them as security for loans, contracted by the bankrupt more than four months before bankruptcy, shall prevail against the right of the trustee in bankruptcy, representing unsecured creditors of the bankrupt. At the outset it may be stated that the warehouse receipts contained no such sufficient description of the cotton as to constitute a valid pledge. They described the cotton as so many bales, marked "H. W. Co.," in the warehouse of the Savannah Warehouse & Compress Company. The mark "H. W. Co." was used to designate all cotton of the bankrupt stored in the warehouse, in excess of the amount called for by any one receipt and it was impracticable for any receipt holder to have his cotton selected from the mass of cotton on storage for the bankrupt without the surrender and cancellation of the original receipts upon the order of the bankrupt, and the issuance to him of a new receipt, with definite marks of specific bales. Not only was the segregation of specific cotton impracticable under the original receipts, but the intention of the parties, as evidenced by the course of business between the factor, the warehouseman, and the lending banks, was that no specific cotton was to be covered by the original receipt. This was and had been the course of business and custom with factors, banks, and warehousemen in Savannah for 30 years. The receipt holder held a blanket receipt for a certain number of bales on all the cotton stored by the factor in the warehouse, with option to secure delivery of specific cotton, but only by securing a cancellation order from the factor for the original receipt, and presenting the order and original receipt to the warehouseman. Whereupon the warehouseman took up the original receipt, issued a new receipt in lieu thereof, describing specific cotton, upon surrender of which the specific cotton would be delivered.

In view of the fact that the cotton warehoused was of many different grades and values, and of the entire absence of sufficient description in the receipt for the purpose of identification, the receipts were insufficient to constitute a valid pledge. Nor would the right of the receipt holder to surrender his blanket receipt for cancellation, upon order of the factor, and thereupon acquire a new receipt for specific bales, help him as against the trustee in bankruptcy, when this right was not exercised until within four months of bankruptcy. The contract between the parties, evidenced by the issuance of the original receipt, was not to pledge any specific cotton. The subsequent identification of specific bales under a newly issued receipt was not to carry out the original intention of the parties, but was a new contract, then first arising since the original attempt to secure the banks by mutual intention related to no specific bales of cotton. Such a change of security, not in pursuance of the original contract or intention, within four months of bankruptcy, would constitute a voidable preference, if the bankrupt was then insolvent, and the banks had reason to so believe. That such was the case, in the two cases here involved, admits of no controversy, since the first attempt on the part of the bankers to se-

cure valid pledges on specific cotton was on the day of bankruptcy, and with knowledge that a petition was in course of preparation.

[4] We think the objection to the potency of the blanket receipt to create an equitable lien on floating unidentified bales, less than the total, in a mass of cotton of various grades and values, is equally good. If there is no way of making certain the property on which the lien is desired to be created, the lien fails, in spite of the intention of the parties to secure and receive security. Identification must be rendered possible either by a sufficient description, through which segregation is possible, or where the commodity is fungible, or by a creation of a lien on the entire mass. In these cases the receipts were insufficient to create a lien by either or both of the two first named methods. The specific bales could not be separated from the mass by the description of them in the receipt, and the bales were of various grades and values. It was not possible to create a valid equitable lien on a part of the mass; for instance, upon 165 or 212 bales in a mass larger than either. Nor could such an attempt, in the case of an equitable lien, be aided by subsequent identification and segregation, as against the trustee afterward and within four months of bankruptcy, any more than in the case of an attempted pledge, and for the same reason.

[5] A valid equitable lien could be created upon the entire mass of cotton held in storage at the warehouse by the bankrupt, when the receipt was issued, and permitting of subsequent withdrawals and substitutions, and including the free cotton in excess of outstanding receipts. Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999; Hurley v. A., T. & S. F. R. R. Co., 213 U. S. 126, 29 Sup. Ct. 466, 53 L. Ed. 729; Wilder v. Watts (D. C.) 138 Fed. 426; Walker v. Brown, 165 U. S. 654, 17 Sup. Ct. 453, 41 L. Ed. 865; Atherton v. Beaman, 264 Fed. 878. According to the course of business and custom, the warehouseman saw to it that no receipts were issued, in excess in the aggregate of the cotton on storage, at the time their issuance was applied for. If the warehouseman did his duty, the cotton in storage would always equal or exceed the outstanding receipts. The excess, when any, constituted the so-called "free cotton" of the factor. Looking to the course of business between the bankrupt, the Savannah Warehouse & Compress Company, and the lending banks, aided by the established custom of long standing in the cotton trade at Savannah, we think the mutual intention of the parties, with reference to the blanket receipts, was to create a lien in favor of the receipt holder on the entire mass of cotton stored for the account of the bankrupt with the Savannah Warehouse & Compress Company, including free cotton at the time of the issuance of the receipts, subject to withdrawals and substitutions, and that the equitable lien, so created, on the entire mass, was for each receipt holder in the proportion the number of bales mentioned in the receipt issued bore to the total number stored. The entire quantity of cotton, free and pledged, stored for the bankrupt, constituted a fund, in the proceeds of which the receipt holders and the bankrupt would share in proportion to their respective interests, as evidenced by the number of bales mentioned in their respective receipts, and the surplus bales of free cotton. The requirement upon

the warehousemen to issue no receipts, unless the aggregate cotton stored for account of the bankrupt equaled or exceeded all outstanding receipts, made the system possible of being worked out in this way. The pledged cotton would always respond to the outstanding receipts, and the free or unpledged cotton would always belong to the factor, and all would share upon a pro rata basis of the number of bales owned, in the cotton or in the proceeds of it.

It admits of no doubt that the intention of all parties to the transactions was to provide legal security to the lending banks, based on the cotton, evidenced by the receipts given as collateral. The law approves of the giving of such security for present advances. This intention of the parties should be effectuated, if a fair construction of the acts, course of business, and custom permits of deducing a contract by the terms of which the lending banks, by virtue of the blanket receipts given them, were to acquire an equitable lien on all cotton stored by the bankrupt with the Savannah Warehouse & Compress Company; such cotton being esteemed a fund for the joint benefit of the receipt holders and of the factor. We think such a contract can and should be deduced from the mutual transactions and the custom of the trade, for the purpose of effectuating the intention of the parties to give and receive adequate security for the loans through the warehouse receipts. Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995; National City Bank v. Hotchkiss, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115.

The District Court gave effect to the substitution of specific receipts on the day of bankruptcy as being the doing of what should have been done under agreement of the parties. The decree recognized as valid the distribution of the cotton on storage as made by the voluntary acts of the receipt holders, the warehouseman, and the bankrupt, on the eve of bankruptcy. This was not in line with our expressed views as to rights of the banks in the fund as an entirety. The method adopted was, however, satisfactory to all parties except the trustee, whose objection was not to the method, but to the fact of distribution among the banks; he claiming all the cotton to the exclusion of the banks. As there was free cotton, the trustee had, however, an interest in the method of distributing the fund. In the absence of a distribution by stipulation of all parties, we think the stored cotton should have been sold, and the proceeds divided among the receipt holders and the trustee, pro rata, according to the number of bales called for by their respective receipts, and in case of the trustee the number of bales of free cotton.

We assume from the record that two appellees secured cotton, or the proceeds, in a manner satisfactory to them, and that the other two banks likewise were satisfied with what they received from statements of counsel. No order was made as to the free cotton, and we assume the trustee has or will obtain it. If what the trustee has received is of less value than would have been his pro rata share based on the amount of free cotton in the fund produced from the sale of all the cotton, he has not received his due, and is entitled to that extent to redress, and an order should be entered in the bankruptcy proceeding to

that effect, and to that extent the order appealed from in No. 4131 should in that event be modified. If the trustee is satisfied with what he has received as his share, or as has received his pro rata share, then the distribution may stand, and no further order will be required.

[6] The appellant's further contention is that, even if a valid equitable lien can be worked out of the transactions that resulted in the issue of the warehouse receipts, it is one that cannot, under the amendment of 1910 to section 47a of the Bankruptcy Act (Comp. St. § 9631), prevail as against the trustee. The contention is that the trustee is vested, as of the date of the filing of the petition, with the legal and equitable rights of a creditor holding a lien as to property in the custody of the bankruptcy court, and as to property not coming into the custody of the bankruptcy court with the rights and remedies of a judgment creditor holding an execution duly returned unsatisfied. Whether the nature of the property under the Georgia statutes and decisions is such as to bring the trustee, as to it, within the description of a creditor with a lien, or an execution unsatisfied, we do not find it necessary to determine. The property is the factor's lien for advances and charges made on the stored cotton, the title being in his customer.

Conceding that the amendment of 1910 applies to such property in Georgia, we still think that the trustee's rights, as conferred by section 47a, as amended, should not prevail against the lending banks. Undoubtedly, if the cotton described in the receipts had been pledged by delivery of actual possession to the lending banks, the pledge would be paramount to the trustee's right. It is equally true that, if the cotton had been sufficiently described in the warehouse receipts, the actual possession of the warehouseman would have been the constructive possession of the lending banks after the receipts were transferred to them, and their rights would have been good against the trustee. If the cotton had remained in possession of the bankrupt, secret liens, affecting it, would have been inoperative as against the trustee. On the contrary, if the bankrupt parted with possession of the cotton, at the time of the making of the loans, pledges or liens then created on it would be valid as against unsecured creditors, and the trustee in bankruptcy. Retention of possession by the bankrupt is essential to the postponement of the rights of lienholders to those of unsecured creditors. After the cotton was warehoused, the warehouseman was vested with actual possession, and he held it either for the factor, or, when receipts were issued against it, then for the holder of the warehouse receipts.

Creditors or owners of warehoused cotton look, not to the actual possession of the cotton, but to the constructive possession evidenced by the possession of the warehouse receipts. Faith in ownership of such cotton is conferred by the possession of the receipts. The record shows that, when receipts were issued by the warehouseman, they were charged against the bankrupt on the books of the warehouseman. Creditors could not have been deceived by the actual possession of the cotton by the bankrupt, since it had no actual possession. They could not have been misled by the bankrupt's possession of the warehouse receipts for the cotton, for they were in possession of the lending

banks. If the receipts were insufficient to transfer possession to the holders of them by reason of insufficient description, then the actual possession remained in the warehouseman, and if resort was had by creditors to it, the same information that would have revealed the fact that the bankrupt had cotton stored there for his account would have also revealed the fact that outstanding warehouse receipts were charged against the cotton on the books of the warehouseman, and would have put the creditor on inquiry as to the disposition of such receipts. If the bankrupt at the creditor's request was unable to produce them, the creditor would be charged with notice that they had been pledged, or attempted to be pledged, and so put on notice of the rights of the holders of the warehouse receipts, whether those rights consisted of a pledge of the cotton or of an equitable lien upon it. Under such circumstances, the rights of the receipt holder would prevail against those of a judgment or an attaching creditor, and so against those of a trustee in bankruptcy, even as added to by the amendment of 1910. Section 47a of the Bankruptcy Act.

We conclude that the decree in No. 4130, dismissing the bill, should be affirmed, and the order in No. 4131 should also be affirmed, with such modification, if any, as may be required to give the trustee his pro rata share in the fund, consisting of the stored cotton or its proceeds; and it is so ordered.