BRISTOL MANUFACTURING CORPORATION *vs.* ARKWRIGHT MILLS.

Bristol.    October 28, 1912. — November 27, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, BRALEY, & DeCOURCY, JJ.

*Contract,* Making.    *Sale,* Delivery.

In an action for the price of certain cotton cloth alleged to have been sold and delivered to the defendant, it appeared that by the terms of the sale the plaintiff agreed to make and deliver to the defendant a designated large amount of the cloth, that the bales of cloth were to be numbered by the plaintiff beginning with a number to be named by the defendant, and that the goods were to be delivered by the plaintiff to a common carrier for shipment to the defendant, that, after a part of the goods had been shipped by the plaintiff and had been accepted by the defendant without question, the defendant attempted to sell a further shipment of the goods to a third person, who refused to take them on the ground that they were not of the required quality, and that, while negotiations between the defendant and the third person were pending, the defendant wrote to the plaintiff as follows: "Please hold shipments of 28″ goods, covered by insurance, subject to our order. Will let you know the result of our examination as soon as completed." The plaintiff continued to manufacture the goods called for by the contract, packed them in bales and numbered the bales according to the previous directions of the defendant, stored them in the plaintiff's storehouse, insured them and held them according to the instructions in the defendant's letter. *Held,* that the directions in the defendant's letter, that the goods withheld from shipment by the plaintiff should be covered by insurance and should be held subject to the defendant's order, constituted a request for a modification of the original provision of the contract as to delivery of the goods to a common carrier, with an additional stipulation as to insurance, and that when these directions were accepted and carried out by the plaintiff the contract was changed to that extent.

In an action for the price of certain cotton cloth, of a common grade well known in the general market, which was alleged to have been sold and delivered to the defendant, it appeared that the cloth was to be manufactured by the plaintiff and to be packed in bales which were to be numbered by the plaintiff, beginning with a number named by the defendant, that by the original agreement a definite quantity of the goods was to be shipped or ready for shipment by a common carrier in each week, and that, after a part of the goods had been shipped, the defendant wrote the plaintiff a letter containing the direction, "Please hold shipments of [the specified goods] covered by insurance, subject to our order," and in another letter referred to such goods as "held for our account," that the plaintiff continued to manufacture the goods called for by the contract, packed them in bales, numbered the bales according to the defendant's directions, stored

them in the plaintiff's storehouse, insured them, and held them subject to the defendant's order, in each instance notifying the defendant and sending him an invoice.   At the time of these transactions the sales act had not gone into effect.   *Held,* that it might have been found that the plaintiff impliedly was authorized by the defendant to appropriate the goods for him when ready for delivery, and that the placing of the numbers upon the bales in accordance with the requirement of the contract and putting the bales in the plaintiff's storehouse were evidence of such an appropriation, which could be found to be a constructive delivery.

CONTRACT, with two counts, the first for the price of certain cotton cloth alleged to have been sold and delivered to the defendant, and the second for an alleged breach of contract by the defendant in refusing to accept and pay for certain cotton cloth which it had agreed to buy from the plaintiff.   Writ dated October 12, 1908.

In the Superior Court the case was tried before *Keating,* J. The plaintiff and the defendant were both manufacturing corporations, the plaintiff owning and operating a large cotton mill in New Bedford and the defendant . owning and operating a large cotton mill in Fall River.   The evidence included the report of an auditor, William H. Fox, Esquire, and also correspondence and oral testimony.   The facts which could have been found upon the evidence are stated in the opinion. The auditor reported that the plaintiff under its first count could recover on the first eight items of its bill of particulars, amounting to $13,563.44.   He reported that there was no evidence before him in regard to the market value of the goods at the time and place of delivery, and that therefore the plaintiff was entitled to recover only nominal damages on its second count.   For that he added $1, finding that the plaintiff was entitled to recover in all $13,564.44 with interest from the date of the writ.

At the close of the evidence the defendant asked the judge to make the following rulings:

" 1.   Aside from the auditor's report there is no evidence in this case that twelve hundred pieces of goods were delivered by the plaintiff to the defendant on March 31, nor that any goods were delivered by the plaintiff to the defendant after the twelve hundred pieces on April 7.

" 2.   On all the evidence in the case, the plaintiff is not entitled to recover for the following items: [enumerating seven items.]

" 3. The defendant is not liable for any goods except those delivered at the Arkwright Mills or to a common carrier to be forwarded to the Arkwright Mills.

" 4. Even if the Arkwright Mills requested the Bristol Mill to hold the goods covered by insurance subject to its order, that would not change the rule as to delivery.

" 5. The letter of April 1, 1908, from the Arkwright Mills to the Bristol Mill which has been put in evidence, does not vary the terms of delivery as stated in the contract, but is in effect a request to withhold deliveries. It does not warrant the Bristol Mill in recovering the purchase price of goods held in accordance therewith but not delivered."

The judge refused to make any of these rulings and submitted the case to the jury with other instructions.

The defendant excepted to the instructions on the ground that as to the goods held at the Bristol Mill there was no evidence of constructive delivery as defined by the court. The jury returned a verdict for the plaintiff in the full amount claimed; and the defendant alleged exceptions.

*A. J. Jennings & I. Brayton,* for the defendant.

*J. C. Bassett,* for the plaintiff.

RUGG, C. J. This is an action of contract to recover for goods sold and delivered and for damages for breach of contract for the sale of goods. There was evidence tending to show that the plaintiff agreed, by a broker's "sale note," to make and deliver to the defendant fifteen hundred thousand yards of cotton cloth. The quality, weight, price, terms and rate of delivery were fixed, and the note further contained these provisions: "No marks of any kind on bales, except bale numbers. Arkwright will let you know what bale number to begin with." The defendant gave to the plaintiff the bale number with which to begin numbering the bales. After about five hundred thousand yards were delivered according to the contract, which the defendant resold without examination, it began selling to the Merrimack Manufacturing Company. The cloth was rejected by it as not being of the required quality. Thereafter examinations were made, and negotiations were carried on between the defendant, the plaintiff and the Merrimack Manufacturing Company, to the end that the goods might be accepted under the contract between the defendant and the Merrimack Manufacturing

Company, which continued for about six weeks, beginning with March 16. These efforts failed, and on or about the first of May the Merrimack Manufacturing Company cancelled its contract with the defendant, and the defendant in turn its contract with the plaintiff, on the ground that the goods were not of the required quality. While these negotiations were pending and while it was in doubt whether the Merrimack Manufacturing Company would continue to accept the goods, the defendant wrote to the plaintiff on April 1 the following: "Please hold shipments of 28″ goods, covered by insurance, subject to our order. Will let you know the result of our examination as soon as completed;" and on April 28: "Please ship at once 1200 pieces billed April 7 held for our account. They are going over the goods at the Merrimack Mfg. Co.'s and expect to let you know the result in a day or two." After April 1 the plaintiff continued its manufacture of the goods according to its contract, baled them and numbered the bales according to the previous directions of the defendant, stored them in its storehouse, insured them, and held them according to the instructions contained in the defendant's letter of April 1, notifying the defendant in each instance and submitting an invoice. There was no difference in the insurance on these goods and other goods in the plaintiff's storehouse. The case was sent to an auditor. His report and the verdict of the jury were for the plaintiff.

The inquiry is whether this evidence was sufficient to show a delivery of the goods between April 1 and the time when the defendant cancelled the contract. This must be answered without reference to the sales act,* which did not go into effect until several months after the events here in issue.

The sale note required a delivery by the plaintiff to a common carrier for shipment to the defendant. It is admitted that no such delivery was made. The first question is whether the defendant's letter of April 1, which was received and accepted by the plaintiff, constituted a modification of the contract as to delivery. The contract between the plaintiff and the defendant was in no wise dependent upon the relations between the defendant and the Merrimack Manufacturing Company. A

---

* See St. 1908, c. 237, § 19, Rule 4.

breach by the latter of its contract with the defendant affords no justification for a cancellation by the defendant of its contract with the plaintiff. The letter of April 1 should be read in the light of all the conditions then known to the plaintiff and the defendant. The defendant contends that so read it should be construed to mean a request to withhold or to hold back shipments pending the negotiations with the Merrimack Manufacturing Company, and that the contract should remain in abeyance meanwhile. But the letter is something more than a mere request to suspend shipments. It is a direction that the goods be covered by insurance. This was an act of proprietorship under all the circumstances. If title remained in the plaintiff, there was no occasion for the defendant to be concerned about the insurance. It is only on the theory that the defendant expected title to vest in it that its reference to insurance becomes reasonable. *Weed* v. *Boston & Salem Ice Co.* 12 Allen, 377. The defendant's further request that the goods be held subject to its order looks in the same direction. Its letter of April 28 directing shipment of certain goods previously billed "held for our [its] account" tends to indicate a reference to goods owned by it. The fair meaning of the letter of April 1 is a request for a modification of the original contract as to delivery of the goods to a common carrier with an additional stipulation as to insurance. When accepted by the plaintiff, the contract was changed to that extent. The precise form in which the insurance was carried by the plaintiff does not appear, but no exception is taken on this point, and after verdict it must be assumed that it conformed to the letter of April 1.

The question remains whether there was sufficient evidence of a separation and an appropriation by the plaintiff of the goods to constitute a constructive delivery. The cloth seems to have been of a common grade well known in the general market, and such as the defendant also manufactured. It was not an unusual kind made upon special order. The manufacture was completed, and nothing remained in order to execute the contract on both sides, except for the buyer to take the goods and pay for them. A definite quantity of goods was to be shipped or ready for shipment each week. Under these circumstances as between the immediate parties nothing was necessary in order to pass title to the buyer

beyond a setting apart of the goods for the buyer. It might have been found that the seller was impliedly authorized to make such appropriation by the buyer. Title may pass although the goods remain in the actual possession of the vendor. *Goddard* v. *Binney,* 115 Mass. 450. *Mitchell* v. *Le Clair,* 165 Mass. 308, 310. *Barrie* v. *Quinby,* 206 Mass. 259, 266. The evidence was that the plaintiff placed numbers upon the bales in accordance with the requirement of the sale note and put them in its storehouse. Any visible marks which are sufficient for identification are enough to show an appropriation. Each bale was a physical entity. When it was stamped or marked with a serial number conforming to an initial number furnished by the defendant, it could be identified readily in a storehouse where there were other bales. It was not necessary that all the bales should be set apart in a group by themselves. The appropriation was complete without it. *Scudder* v. *Worster,* 11 Cush. 573, 576. *Sanger* v. *Waterbury,* 116 N. Y. 371.

It follows that the defendant's requests for rulings were refused rightly, and that there was no error in the charge.

*Exceptions overruled.*