GEORGE BOIKO & Co., INC., Respondent, *v.* ATLANTIC WOOLEN MILLS, INC., Appellant.

First Department, February 11, 1921.

Sales — when title passes where goods exist at time of contract and no place of delivery is mentioned — action for purchase price — when title to unascertained goods passes — appropriation of such goods to contract with implied consent of purchaser.

Where two bales of overcoat clippings were already made up and in a deliverable state at the time defendant placed a written order therefor, and a bale of worsted clippings was in existence and only required sorting to separate different grades and colors, title to the three bales passed when the worsted clippings were sorted, made into a bale and put in deliverable shape, and the three bales were set aside and tagged. Thereafter, under section 144 of the Personal Property Law, the seller could maintain an action for the purchase price if the purchaser wrongfully refused or failed to pay.

When no place of delivery is specified in the contract of purchase or sale of goods, the place of delivery is the seller's place of business.

Even though the transaction be regarded as a contract for the sale of unascertained goods, in so far as the bale of worsted clippings was concerned, title would pass when the bale was made up, tagged and put aside, in a deliverable state awaiting defendant's removal of the same, as such act would constitute an unconditional appropriation of these goods to the contract with the implied consent of the purchaser.

In such case defendant's consent to the appropriation of the goods to the contract may be implied by sending a truckman for the goods, and also by not claiming the right to make the selection or to inspect the goods after selection.

SMITH and DOWLING, JJ., dissent, with opinion.

APPEAL by the defendant, Atlantic Woolen Mills, Inc., from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of said Appellate Term on the 29th day of March, 1920, affirming a judgment of the City Court of the City of New York in favor of the plaintiff, and an order denying defendant's motion for a new trial.

*Meyer Boskey* of counsel [*Wise & Seligsberg*, attorneys], for the appellant.

*George W. Glaze* of counsel [*Glaze & Fine*, attorneys], for the respondent.

PAGE, J.:

The plaintiff was engaged in the business of buying and selling woolen rags. The defendant was manufacturing shoddy for woolen mills, having its mill at Dryden, N. Y., and its office in the city of New York, with S. Bernstein & Sons, Inc., Mr. Solomon Bernstein being president of both corporations. The testimony of the plaintiff's president, which the jury accepted, was briefly as follows: On July 8, 1918, Mr. Bernstein called him on the telephone and asked whether he had khaki clippings, and he replied that he had and would sell him two bales of overcoat clippings and one bale of worsted clippings, and quoted a price of forty-five cents a pound for the overcoat clippings and seventy-five cents a pound for the worsted. Mr. Bernstein told him that he would purchase them and would confirm the purchase in writing, which he did on the tenth of July. The overcoat clippings were already baled, and on the same day that the written confirmation was received the worsted clippings were sorted out and made up into a bale. The three bales in the afternoon of that day were tagged and set apart to be held for the defendant to call for them. Thereafter the defendant sent a truck to plaintiff's place of business between twelve noon and twelve-thirty o'clock. The shipping clerk told the truckman that the men were out at lunch, but that if he would wait five minutes some of them would be in and would get the bales down for him. The truckman thereupon drove off. The plaintiff's president repeatedly telephoned the defendant to

send for the goods and on August 22, 1918, wrote to the defendant: " The two bales of khaki overcoatings and one bale of khaki worsteds sold you on July 10th are still awaiting your call.  We cannot ask you for money as long as you have not taken the stock in and we need the money, so would ask you to kindly send for these without delay."  Defendant replied on August 31, 1918: " We needed the stock urgently when we purchased it from you, and as a matter of fact we sent for it and called you up several times for same, and you did not have it at the time you stated you would have it. Due to government regulations we are not in a position to handle this stock any more, and we considered it cancelled long ago."  To this the plaintiff replied stating that the calling up had been done by the plaintiff and not by the defendant, and that the only time a truckman had called for the goods was when the plaintiff's men were at lunch and the driver refused to wait five minutes for them to return, which they presumed was by defendant's orders; and reiterated the demand for the defendant to take and pay for the three bales.  Not hearing from the defendant, plaintiff brought this action to recover the purchase price of the goods in the City Court of the City of New York, and recovered a judgment, which was affirmed by the Appellate Term.

The question to be determined on this appeal is whether the title to the goods passed from plaintiff to defendant, and the defendant wrongfully refused to pay.  If it did, the plaintiff could maintain the action.  (Sales of Goods Act [Pers. Prop. Law], § 144, as added by Laws of 1911, chap. 571.) No place of delivery having been specified in the contract, the place of delivery was the seller's place of business.  (Id. § 124, as added by Laws of 1911, chap. 571.)  The two bales of overcoat clippings were already made up and in a deliverable state at the time the written order was received by the plaintiff, and the worsted clippings were existing goods in possession of the plaintiff.  Very little sorting of the latter was necessary, as plaintiff had received some clippings of this grade from a customer and needed only to sort the worsted clippings from his own stock.  This sorting was to separate clippings of different grades and colors.  The two bales were in condition

to be immediately appropriated to the contract when the contract was made.  The title to the three bales passed when the worsted clippings were sorted and made into a bale so that they were in deliverable shape and they were all set aside and tagged.  (Id. § 100, rules 1, 2, as added by Laws of 1911, chap. 571; *Ferry* v. *South Shore Growers & Shippers Assn.*, 189 App. Div. 542.)  If, as Mr. Justice SMITH contends, we should treat this as a contract for the sale of unascertained goods, in so far as the bale of worsted clippings is concerned, title would pass when the bale was made up, tagged and put aside, in a deliverable state awaiting the call of the defendant's truckman.  That would be an unconditional appropriation of these goods to the contract with the implied consent of the buyer.  (Id. § 100, rule 4, as added by Laws of 1911, chap. 571.)  The consent of the defendant may be implied from two circumstances: (1) The defendant sent its truckman for the goods; he came at an hour when it was not possible to make delivery and refused to wait for five minutes.  His refusal was not on the ground that the goods had not been selected or inspected by the defendant, nor was there any claim on the part of the defendant on the trial that it had the right to inspect.  (2) The defendant, by not claiming the right to make the selection or to inspect the goods after the selection, vested the vendor with implied authority to make the selection and thus vest the title in the vendee.  (*Cooke* v. *Millard*, 65 N. Y. 352, 366.)  In that case, upon which Mr. Justice SMITH relies, the distinction is made between the sale by sample of goods to be manufactured, and the sale of existing chattels where the selection from a mass of the same kind was required.  The court said: " This doctrine requires the assent of both parties, though it is held that it is not necessary that such assent should be given by the buyer subsequently to the appropriation by the vendor.  It is enough that the minds of both parties acted upon the subject and assented to the selection.  The vendor may be vested with an implied authority by the vendee to make the selection and thus to vest the title in him (*Browne* v. *Hare*, 3 H. & N. 484; S. C., 4 id. 822).  This doctrine would be applicable to existing chattels where a mere selection from a mass of the same kind was requisite.  On the other hand, if the goods are to be

manufactured according to an order, it would seem that the mind of the purchaser after the manufacture was complete, should act upon the question whether the goods had complied with the contract [Citations].   This point may be illustrated by the case of a sale by sample, where the seller agrees to select from a mass of products certain items corresponding with the sample, and forward them to a purchaser.   The act of selection by the vendor will not pass the title, for the plain and satisfactory reason that the purchaser has still remaining a right to determine whether the selected goods correspond with the sample."

Thus it appears that the illustration of the sale by sample applied to the case of a sale of goods to be manufactured, and not to a mere selection from a mass of existing chattels, to which the first part of the quotation applied.

And again, preceding the quotation in Mr. Justice SMITH's opinion from the case of *Bog Lead Co.* v. *Montague* (10 C. B. [N. S.] 481), a very illuminating portion of the *Cooke* v. *Millard* opinion reads:  " It cannot be conceded that there was any acceptance in the present case by reason of the acts and words occurring between the parties *after* the parol contract, and before the goods were prepared for delivery.   There could be no acceptance without the assent of the buyers to the articles in their *changed* condition and as adapted to their use. If the case had been one of specific goods to be selected from a mass without any preparation to be made, and nothing to be done by the vendor but merely to select, the matter would have presented a very different aspect.   This distinction is well pointed out by WILLES, J., in *Bog Lead Company* v. *Montague* (10 C. B. [N. S.] 481)."

In the case of *Cooke* v. *Millard* (*supra*) the defendants desired to purchase certain kinds of lumber in quantities to be specified, and were shown by plaintiffs the lumber then in their yard, which was of the desired quality but needed to be dressed and cut into different sizes.   There was much more lumber in the yard shown to defendants than was requisite for their purposes.   An oral order was given by defendants for certain quantities and sizes of lumber at specified prices.   No particular lumber was selected or set apart to fill the order, nor was any part of it then in condition to be

First Department, February, 1921. [Vol. 195.

accepted or delivered. The lumber after being prepared and dressed according to the agreement was piled on the plaintiffs' dock and notice sent to the person designated for that purpose by the defendants. Two days thereafter the lumber was destroyed by fire. The Commission of Appeals clearly distinguished the rules applicable to that case, a contract for the sale of goods to be manufactured, from the rules applicable to the instant case, which was the sale of existing goods to be selected from a mass of the same kind. In the former they held that title did not pass until the goods had been inspected and accepted by the purchaser, while in the latter the vendor had the implied authority from the vendee to make the selection and title passed when the vendor made the selection and everything was done by the vendor to put the goods in deliverable shape and they were unconditionally appropriated to the contract.

In the instant case the clippings were waste from the manufacture of overcoats and uniforms for the use of the army. They were staple goods, ascertained, in existence and at the time of the contract in possession of the seller. The two bales of overcoat clippings were in deliverable condition when the contract was made. The one bale of worsted clippings was in possession of the seller and only required to be selected from other clippings. There was no sample to which they were required to conform, and no process of manufacture through which they had to go, to put them in deliverable shape; they needed merely to be gathered and selected from the mass, baled and tagged. (*Bristol Mfg. Corp.* v. *Arkwright Mills*, 213 Mass. 172, 176; *Leonard* v. *Carleton & Hovey Co.*, 230 id. 262, 264; *Sanger* v. *Waterbury*, 116 N. Y. 371, 374.) I am of opinion that title to the goods had passed and the plaintiff could maintain an action for the price.

The determination of the Appellate Term should be affirmed, with costs.

Clarke, P. J., and Greenbaum, J., concur; Dowling and Smith, JJ., dissent.

Smith, J. (dissenting):

Upon July 8, 1918, the defendant ordered of the plaintiff two bales of khaki overcoating clippings and one bale of

khaki worsted clippings for suitings.   The plaintiff was engaged in the manufacture of shoddy woolen cloth which was sold to the government.   There is no claim here that there was any imposition upon the government.   The goods were sold as shoddy cloth.   The evidence is not clear whether or not at the time the order was given the overcoating clippings were baled.   One of the plaintiff's witnesses swears, in one place, that they were nearly baled, and at another place that it was in process of baling.   The worsted clippings for suitings, however, were not baled and, according to the evidence, they were required to be selected from a general mass in which there was mixed other rubbish or goods of a different kind. The plaintiff's witnesses swear that within a couple of days after the giving of the order the worsted clippings were also selected by one of the plaintiff's employees and baled, and that three bales of goods, two of overcoating clippings and one of worsted clippings, were set aside and tagged and marked as for the defendant.   The goods were to be delivered by the plaintiff at the seller's place of business.   There is a dispute in the evidence as to the time the goods were sent for and as to the circumstances of the refusal of the plaintiff to deliver at that time.   Upon this point the jury has found for the plaintiff, so that we must deem it established as a fact that the story of the plaintiff's witnesses is true and that at the time that these goods were sent for by the defendant it was at the noon hour when the men were away for their luncheon, and that the defendant's truckman refused to wait until they would return in order to bring down the bales.   One of the plaintiff's witnesses claims to have telephoned several times to the defendant stating that the goods were ready and asking when they could be delivered, and that on August twenty-second he wrote to the defendant that the goods were still awaiting its call.

The plaintiff has brought this action for goods sold and delivered, although confessedly there has never been any actual delivery of the goods, or any other delivery than could be implied from the baling of these goods and setting them aside for the defendant's order.   The judgment asked and recovered is for the purchase price of the goods.   The contention of the defendant appealing is that the title in the

goods never passed and, if any liability exists, the liability is only for failure to accept the goods.

Before referring to the provisions of the Sales of Goods Act, it may be well to refer preliminarily to a few questions raised in reference to this contract. It is first argued that the title has at least passed to two of the bales which are claimed to have been already put up at the time of the making of the contract, and that the title passed to the third bale at the time that it was thereafter put up and set aside and marked with the defendant's name. But this contract was an entire contract for three bales. I do not conceive that it can be divisible so as to hold that title passed as to part of the contract at one time and to another part at another time. In *Cooke* v. *Millard* (65 N. Y. 352) the contract was there held to be an executory contract of sale. The goods were destroyed by fire. The plaintiffs, the vendors, sued for the purchase price, and it was there claimed that at least title to part of the goods had passed although another part had not been put in deliverable condition so as to pass title. In discussing this claim the court said: " The contract called for distinct parcels of surface pine boards, clapboards and matched ceiling. Part of the lumber was surfaced, and a portion of it still in the rough. The clapboards were manufactured from stuff one and a quarter-inch thick. It had to be split, surfaced and rabbeted. The order for the various items was a single one, there being 15,441 feet of the surface pine, 10,144 feet of clapboards, and 8,000 feet of matched ceiling. The surface boards and the ceiling were in existence, and only needed dressing to comply with the order. Whether the clapboards can be deemed to have been in existence, may be more doubtful. If a part of the order is within the Statute of Frauds and a portion of it without it, the whole transaction must be deemed to be within it, as an entire contract cannot, in this case, be divided or apportioned. (*Cooke* v. *Tombs*, 2 Anst. 420; *Chater* v. *Beckett*, 7 T. R. 201; *Mechelen* v. *Wallace*, 7 A. & E. 49; *Thomas* v. *Williams*, 10 B. & C. 664; *Loomis* v. *Newhall*, 15 Pick. 159.) I think it clear that the contract was in its nature entire. It was in evidence that the intention was to buy enough, in connection with what Percival had on hand, to make up a boat load. This could only be accomplished by

using the entire amount of the order. Accordingly, even if the contract for the clapboards was not a sale, it cannot be separated from the rest of the order, and the cases above cited are applicable."

This contract, then, being an entire contract, cannot be apportioned and a recovery had for a part thereof, nor can it be held that the title passed to a part thereof before the title passed to the three bales ordered. The right of the plaintiff, therefore, to recover the purchase price must be determined as though none of the goods ordered had been baled and put in deliverable shape, or appropriated by the seller to the contract within the meaning of the statute hereinafter referred to.

Again, under the evidence it is clear that the selection by the vendor of these goods for the purpose of placing them in the bales was not a selection " from the same kind " of goods, but was a selection from a mass of mixed goods, those corresponding with the order and other goods not corresponding therewith. The goods were to be selected, not from khaki clippings of different colors. The order appears to have been to select goods to correspond with a certain grade, which is spoken of by the plaintiff in his examination as grade 55. These goods were in a mass of rags in the plaintiff's premises. The baling itself is sworn to by the plaintiff as requiring from fifteen to twenty minutes, but the selection and assortment of these goods required " probably two or three hours." The plaintiff swears that the selection was made by " throwing out the impurities," and further, " to see that there was no foreign material in it," and if there was any foreign material " that is cast aside." Significance is given to this evidence by the fact that this was in fact a " sale of rags," and the further evidence, which stands uncontradicted in this case, that ordinarily about forty per cent of goods delivered under such a contract are rejected as not coming up to grade. It is unnecessary, therefore, to consider that class of cases which refer to a selection to be made by the seller from goods " of the same kind." That expression might well be held to refer to fungible goods in respect of which the assent of the purchaser to the appropriation under rule 4 of section 100 of the Personal Property Law (as added by Laws of 1911, chap. 571) may be

deemed to be implied. The goods clearly were unascertained goods, and there can be in respect of such goods no implied assent to an appropriation by the seller himself in order to pass title to the purchaser.

Again, there is no question here of a delivery as where the contract provides that the delivery shall be made to a carrier, in which case, upon the loss of the goods while in the hands of the carrier, the rule is sometimes stated that the title has passed to the consignee and may revest in the consignor upon a final rejection by the consignee if the goods do not correspond with the goods ordered. There was in the case at bar no delivery whatever, but a bare act of appropriation. The purchaser sent his truck for the goods, but they were not received by the truckman and not delivered to him. For whatever reason, seems to me immaterial, as long as there was in fact no actual delivery either to the purchaser or to any one in his behalf.

Again, the scheme of the act leaves the seller with ample remedy. If title has not passed and the goods cannot be readily sold in the market, he may sell the goods and sue the purchaser for refusal to accept the same, and recover the difference between the purchase price and the price which he has received therefor, under section 145 of the Personal Property Law (as added by Laws of 1911, chap. 571). Under the provisions of that law, however, as I read it, he is confined to that remedy unless the title has passed to the purchaser, in which case he can sue for the purchase price. (See Pers. Prop. Law, § 144, subd. 1, as added by Laws of 1911, chap. 571.) This action was brought for the purchase price, upon the theory that title has passed to the purchaser. There is no claim to recover the purchase price under subdivision 3 of section 144 (as added by Laws of 1911, chap. 571). That subdivision provides that, although the property has not passed, " if they cannot readily be resold for a reasonable price," the seller may offer to deliver the goods to the buyer, and if the buyer refuses them, he may notify the buyer that the goods are thereafter held for him as bailee, and he may thereafter treat the goods as the buyer's and maintain an action for the price. There is no proof in this case that these goods could not be readily sold in the market at a reasonable price. Such proof

is. an essential element in a cause of action under subdivision 3 of section 144. Moreover, under the statement of plaintiff's counsel upon the trial, it appeared that the goods could have been sold for a reasonable price. The plaintiff's counsel stated upon the trial that upon July tenth the government had established seventy cents as a maximum price, so that the defendant could go out on the market and buy it for five cents less. Under that statement by the plaintiff's counsel, the plaintiff could easily have sold these goods at a reasonable price, and would have had his right of action for his damages under section 145 of the Personal Property Law. There is no allegation in the complaint that the property could not have been sold at a reasonable price. Moreover, the plaintiff makes no such claim upon this argument, but bases its right to recover solely upon the fact that title to these goods had passed to the purchaser by reason of the selection made by the buyer and the setting apart of the goods appropriated and tagging the same as the goods of the purchaser. The sole question here to determine is, therefore, as to whether under the facts in this case such an act on the part of the purchaser passes the title to the buyer which would authorize it to recover under the 1st subdivision of section 144 of the Personal Property Law, which distinctly authorizes an action to recover the purchase price only where the property in the goods has passed to the purchaser.

By section 98 of the Personal Property Law (as added by Laws of 1911, chap. 571) it is provided, where there is a contract to sell unascertained goods, no property in the goods is transferred to the buyer unless and until the goods are ascertained, but property in an undivided share of ascertained goods may be transferred as provided in section 87 (as added by Laws of 1911, chap. 571). The latter clause of this section is not claimed here to be material to this question. By section 100 (as added by Laws of 1911, chap. 571) rules are given for ascertaining the intention of the parties, and by rule 4 it is provided: " Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of

the seller, the property in the goods thereupon passes to the buyer." The plaintiff's contention is that the selection from this mass of rags, containing foreign material and impurities as well as the goods which were properly applicable to the contract, is an appropriation by the seller to the contract with the assent of the buyer. This contention is challenged by the defendant.

In *Cooke* v. *Millard* (*supra*) the defendants, desiring to purchase a bill of lumber, went to the plaintiffs' yard, where they were shown lumber of the desired quality but which, to meet their requirements, needed to be dressed and cut into different sizes. They gave a verbal order for certain quantities and sizes, amounting at the prices specified to $918.22, to be taken from the lots examined by defendants. There was a much larger quantity of lumber in the yard, and no particular lumber was selected or set apart to fill the order. It was defendants' intention to purchase enough to fill out a boat load. After giving the order, defendants pointed out the piles from which they desired the lumber to be taken and directed that, when prepared, it should be placed upon plaintiffs' dock and notice given of readiness to deliver. Plaintiffs filled the order, placed the lumber on their dock and gave notice, as agreed. It was not removed, and two days thereafter it was destroyed by fire. In an action to recover the contract price, it was held that the contract was in its nature entire and, though executory, was one of sale within the meaning of the Statute of Frauds; that the subsequent acts of defendants did not turn the executory contract into an executed one, and did not amount to an " acceptance and receipt " of the lumber so as to take the case out of the statute; that the title to the lumber, therefore, never became vested in the defendants, and they were not liable. It will be seen that the first question there decided was that this was an executory contract of sale. The property was cut into the sizes required by the purchaser and was placed upon the seller's dock, as was provided in the contract. The seller had in that case done everything that could be done by him to appropriate the property to the contract. Neverthless, it was held that such acts did not amount to an appropriation with the consent of the buyer so as to vest the title in the buyer. The opinion

of Commissioner DWIGHT in part reads as follows: " Proceeding on the view that this was an executory contract, it might still pass into the class of executed sales by acts ' of subsequent appropriation.' In other words, if the subsequent acts of the seller, combined with evidence of intention on the part of the buyer, show that specific articles have been set apart in performance of the contract, there may be an executed sale and the property in the goods may pass to the purchaser. (Blackburn on Sales, 128; Benjamin on Sales, chap. 5; *Fragano* v. *Long*, 4 B. & C. 219; *Rohde* v. *Thwaites*, 6 id. 388; *Aldridge* v. *Johnson*, 7 E. & B. 885; *Calcutta Company* v. *De Mattos*, 33 L. J. [Q. B.] 214, in Ex. Chamb.) This doctrine requires the assent of both parties, though it is held that it is not necessary that such assent should be given by the buyer subsequently to the appropriation by the vendor. It is enough that the minds of both parties acted upon the subject and assented to the selection. The vendor may be vested with an implied authority by the vendee to make the selection and thus to vest the title in him. (*Browne* v. *Hare*, 3 H. & N. 484; S. C., 4 id. 822.) This doctrine would be applicable to existing chattels where a mere selection from a mass of the same kind was requisite. On the other hand, if the goods are to be manufactured according to an order, it would seem that the mind of the purchaser, after the manufacture was complete, should act upon the question whether the goods had complied with the contract. (See *Mucklow* v. *Mangles*, 1 Taunt. 318; *Bishop* v. *Crawshay*, 3 B. & C. 415; *Atkinson* v. *Bell*, 8 id. 277.) This point may be illustrated by the case of a sale by sample where the seller agrees to select from a mass of products certain items corresponding with the sample, and forward them to a purchaser. The act of selection by the vendor will not pass the title, for the plain and satisfactory reason, that the purchaser has still remaining a right to determine whether the selected goods correspond with the sample. (*Jenner* v. *Smith*, Law Rep., 4 C. P. 270.) In this case the plaintiff at a fair, orally contracted to sell to the defendant two pockets of hops, and also two other pockets to correspond with a sample, which were lying in a warehouse in London, and which he was to forward. On his return to London he selected two out of three pockets which he had there, and

directed them to be marked to 'wait the buyer's order.' The buyer did no act to show his acceptance of the goods. The court held that the appropriation was neither originally authorized nor subsequently assented to by the buyer, and that the property did not pass by the contract. Brett, J., put in a strong form the objection to the view that the buyer could have impliedly assented to the appropriation by the seller. It was urged, he said, 'that there was evidence that by agreement between the parties, the purchaser gave authority to the seller to select the two pockets for him. If he did so, he gave up his power to object to the weighing and to the goods not corresponding with the sample; for he could not give such authority and reserve his right so to object; and indeed it has not been contended that he gave up those rights. That seems to me to be conclusive to show that the defendant never gave the plaintiff authority to make the selection so as to bind him. Under the circumstances, therefore, it is impossible to say that the property passed.' (P. 278.) The same general principle was maintained in *Kein* v. *Tupper* (52 N. Y. 550), where it was held that the act of the vendor putting the goods in a state to be delivered did not pass the title, so long as the acceptance of the vendee, provided for under the terms of the contract, had not been obtained.

" *The result is, that if this sale, executory as it was in its nature, had not fallen within the Statute of Frauds, there would have been no sufficient appropriation by the vendor to pass the title.* The transaction, so far as it went, was, even at common law, an agreement to sell and not an actual sale."

The court then proceeds to consider whether there had been an acceptance of this lumber, and on page 369 quotes from the opinion of Willes, J., in *Bog Lead Co.* v. *Montague* (10 C. B. [N. S.] 481), where it was said: " It may be that in the case of a contract for the purchase of unascertained property to answer a particular description, no acceptance can be properly said to take place before the purchaser has had an opportunity of rejection. In such a case, the offer to purchase is subject not only to the assent or dissent of the seller, but also to the condition that the property to be delivered by him shall answer the stipulated description. A right of inspection to ascertain whether such condition has been

complied with is in the contemplation of both parties to such a contract; and no complete and final acceptance, so as irrevocably to vest the property in the buyer, can take place before he has exercised or waived that right. In order to constitute such a final and complete acceptance, the assent of the buyer should follow, not precede, that of the seller, but where the contract is for a specific, ascertained chattel, the reasoning is altogether different. Equally, where the offer to sell and deliver has been first made by the seller and afterwards assented to by the buyer, and where the offer to buy and accept has been first made by the buyer and afterwards assented to by the seller, the contract is complete by the assent of both parties, and it is a contract the expression of which testifies that the seller has agreed to sell and deliver, and the buyer to buy and accept the chattel."

Later the court cites from the opinion of BRAMWELL, B., in *Coombs* v. *Bristol & Exeter R. Co.* (3 H. & N. 510): " The cases establish that there can be no acceptance where there can be no opportunity for rejecting." Further, in discussing the meaning of the word " acceptance " under the statute, the court said: " The buyer had a right to see whether the bulk was according to the sample, and until he had exercised that right there was no acceptance." I do not find that the reasoning in this case has ever been questioned in this State.

In the case cited the question involved both the Statute of Frauds and the passing of title under a valid sale. The question was there considered, *first*, as to whether there had been an appropriation by the seller with the assent of the buyer, and also the question whether there had been such an acceptance as would take the case out of the statute. I can see no distinction as to the passing of title between a purchase by sample and a purchase by description. If in a purchase by sample there can be no implied assent that the seller can appropriate the goods to the contract where they must be selected from a mass containing other goods of other kinds, I can find no implied assent of the buyer to the selection by the seller in a sale by description. Furthermore, where, as in the case cited, the goods were to be put in a deliverable state by sawing the lumber into different sizes, if that be held to be an executory contract of sale, and not a contract

to manufacture, the same rule must apply as to the right in the seller to put those goods in such deliverable shape and appropriate them to the contract as in a sale by sample or a sale by description, where a selection must be made from a mass of mixed goods.

In *Andrews* v. *Cheney* (62 N. H. 404) plaintiff had bought goods of defendant and paid for them. Defendant did not have in stock the goods wanted, and plaintiff selected from samples. The defendant agreed to have the goods at his store within two weeks, at which time plaintiff was to call for them. Within the stipulated time defendant got the goods into his store, set them apart by themselves and marked them with plaintiff's name. The goods, together with the store, were destroyed by fire, the plaintiff not having called for them. Upon the question of title, the court said: " The property in the goods did not pass to plaintiff by virtue of the contract, for they were not then ascertained and may not have been in existence. The agreement on the part of the defendant was executory. He agreed to furnish goods corresponding to the samples selected by the plaintiff. If the goods subsequently procured and set apart by the defendant did not conform to the samples, the plaintiff had a right to reject them. It does not appear that he waived that right. The defendant was not concluded by his selection; he might have sold or otherwise disposed of the particular articles set apart by him and substituted others in their place. A contract of sale is not complete until the specific goods upon which it is to operate are agreed upon. Until that is done the contract is not a sale but an agreement to sell goods of a particular description. It is performed on the part of the vendor by furnishing goods which answer the description. If, as in the case of a sale by sample, the specific goods are not ascertained by the agreement, the property does not pass until an appropriation of specific goods to the contract with the assent of both parties. [Citing authorities.] If the plaintiff authorised the defendant to make the selection, the property immediately upon the selection vested in the plaintiff. (*Aldridge* v. *Johnson*, 7 E. & B. 885.) It not appearing the plaintiff gave such authority, the goods at the time of the fire were the property of the defendant and their destruction was his loss."

And the rule of law thus announced seems to me to have found exact expression in the statute itself. Under section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571), provision is made for the recovery of the purchase price where the title has passed and also where title has not passed, where tender has been made and the goods are not readily salable at a reasonable price in the market. In 26 Ruling Case Law, at page 628, the rule as regards a tender of property is thus stated: " In case of a debt payable in property, the effect of a tender is to satisfy the debt, by vesting the property tendered in the creditor; and to accomplish that result there should be such a separation or designation of the property, as that the creditor may know his property and distinguish it, and be able to assert successfully his right of property against any one who may invade it, and there must be also an actual offer of the property in payment, a mere readiness to deliver being insufficient." In a note to section 144 of the Personal Property Law the editor of McKinney's Consolidated Laws of New York (Bk. 40, p. 238) says: " By a long line of decisions in this State it has been held that, when the seller of personal property makes due tender of performance, but the buyer refuses to take the goods, the seller may retain the goods as belonging to the buyer and recover the contract price from him. This has been true at common law, regardless of the nature of the goods, whether they were readily resalable or not." To this are quoted a number of New York decisions; but the note further states: " The New York rule on this subject has been greatly modified by the Sales Act. Now only in cases where the goods ' cannot readily be resold for a reasonable price ' may the seller force the title on the buyer and recover the price of him. Formerly he could recover the price in all cases after due tender." I can conceive of no more positive act of appropriation than the setting aside of the property in such form as necessary to make a lawful tender of this property. The property must be set aside so that it is clearly distinguishable, and the purchaser must be able to identify the property so that he may take it and claim it as his own. If such act of appropriation as is necessary to a valid tender be sufficient to pass title, then the provisions of subdivision 3 of section 144 are unnecessary, as the purchase

First Department, February, 1921.          [Vol. 195.

price can be obtained because title has passed.  But the rule as there stated, that after such tender the purchase price can only be recovered where the property can be readily resold at a reasonable price, is a clear indication that such tender and the appropriation necessary therefor does not force title upon the purchaser, and the seller is remitted to his action for damages for non-acceptance of the goods under section 145 of the Personal Property Law, and cannot recover the purchase price under section 144 unless he can show that the goods were not readily salable at a reasonable price.  It is unnecessary, therefore, to analyze the cases where the assent of the buyer to an appropriation by the seller is implied where the goods are to be selected from property of the same kind or to discuss those cases where the purchaser has made a contract for delivery to a carrier or at a specific place, and delivery has been there made, inasmuch as it cannot be here claimed that the property was to be selected from a mass of property of the same kind, nor that there has been any delivery made at any place specified in the contract, or any delivery whatever .made to the purchaser himself.

Inasmuch, therefore, as the complaint states an action for goods sold and delivered, and as no delivery is proven, and as no property has passed to the purchaser under the Personal Property Law, and as there is no allegation in the complaint that the goods could not readily be resold for a reasonable price, the determination and judgment should be reversed and the complaint dismissed.  If the seller would seek to recover under section 145 of the Personal Property Law, under which section alone, as I view it, could he, in any event, have a cause of action, he would be required to recast his pleading so as to base his right of recovery upon the purchaser's failure to accept the goods ordered.

Dowling, J., concurs.

Determination affirmed, with costs.