BERKSHIRE COTTON MANUFACTURING COMPANY, Appellant, *v.* SOL COHEN et al., Respondents.

Sales — construction of contract of sale of goods for future delivery — when recovery may be had on proof that goods were set apart by seller and that buyer refused to accept them.

1. A contract wherein plaintiff agreed to manufacture, sell and deliver goods and ship same to defendants when directed, and defendants covenanted to accept and pay for the same at specified times, is a contract for the sale of "future goods." (Pers. Prop. Law, § 156.)

2. The goods as manufactured by plaintiff having been with the assent of defendants unconditionally appropriated to the contract, title to the same passed to defendants. (Pers. Prop. Law, § 100.)

3. Notwithstanding an extension of time of certain payments due from defendants were upon their request granted by plaintiff, the latter was justified in suspending deliveries until earlier installments of goods had been paid for in accordance with the terms of the contract and defendants were not warranted in an attempted cancellation of the contract by reason of a refusal on part of plaintiff to make delivery of said goods.

4. The complaint alleged a sale and delivery of the goods. Upon the trial plaintiff established allocation of the goods rather than actual delivery. *Held*, that while the complaint might properly have alleged the form of delivery, under the circumstances of the case it was permissible to admit evidence of an appropriation of the goods and reversal of a judgment directed by the trial justice was error. (*Boiko & Co.* v. *Atlantic Woolen Mills, Inc.*, 195 App. Div. 207, distinguished.)

*Berkshire Cotton Mfg. Co.* v. *Cohen*, 204 App. Div. 397, reversed.

(Argued June 14, 1923; decided July 13, 1923.)

APPEAL from a judgment, entered February 13, 1923, upon an order of the Appellate Division of the Supreme Court in the first judicial department reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and directing a dismissal of the complaint.

*David Vorhaus* and *Frederick Hemley* for appellant. Plaintiff is entitled to sue for the purchase price. (*Procter & Gamble Co.* v. *Peters*, 233 N. Y. 97; *Smith Co.* v. *Moscahlades*, 193 App. Div. 126; *Dwane* v. *Weil*, 199 App. Div. 719; *Ferry* v. *S. S. G. & S. Assn.*, 189 App. Div. 542; *Miller* v. *Ungerer & Co., No. 1*, 188 App. Div. 655; *Phelps-Stokes Estates* v. *Nixon*, 222 N. Y. 93; *Boiko & Co., Inc.*, v. *Atlantic Woolen Mills*, 195 App. Div. 207; 234 N. Y. 583; *Burrows* v. *Whitaker*, 71 N. Y. 296; *Terry* v. *Wheeler*, 25 N. Y. 520.) Plaintiff had a lien on the goods which defendants requested plaintiff to ship. (*McFarland* v. *Wheeler*, 26 Wend. 467; *Heller & Bro.* v. *Continental Mills*, 196 App. Div. 7; 233 N. Y. 641.) Plaintiff's complaint for goods sold and delivered in the conventional form is sufficient. (*De Bary* v. *Souer*, 101 Fed. Rep. 425; *Bready* v. *Wechsler Co.*, 200 App. Div. 78; *Boiko* v. *Atlantic Woolen Mills*, 195 App. Div. 207; 234 N. Y. 583; *Burrows* v. *Whitaker*, 71 N. Y. 296.)

*I. Maurice Wormser* and *Leonard Acker* for respondents. Title to the goods in suit did not pass and no action for the price will lie. (*Rosenberg Bros. & Co.* v. *Buffum*

Co., 234 N. Y. 338; *Standard Casing Co. v. California Casing Co.*, 233 N. Y. 413; *Cotton Hosiery Mills* v. *Buchwald*, 194 N. Y. Supp. 145; *Harbison* v. *Propper*, 112 Misc. Rep. 588.)

HOGAN, J. The plaintiff is a corporation organized under the laws of the state of Massachusetts. Defendants are copartners doing business in the city of New York. The complaint alleges: "That heretofore and prior to the commencement of this action, the plaintiff sold and delivered to the defendants at defendants' request and selection, goods, wares and merchandise for the agreed price and reasonable value of twenty thousand, five hundred thirty-five and 37/100 dollars, no part of which has been paid although long past due and demanded, and by reason of the premises said sum with interest from September 27, 1921, is due and owing plaintiff for which it demands judgment."

Defendants in their answer deny the foregoing allegations of the complaint except that they admit that they entered into three several agreements for the sale by plaintiff to them of certain merchandise, and admit they have paid no part of the sum of $20,535.37. For a separate defense defendants set forth the contracts between them and plaintiff, refusal on part of plaintiff to deliver goods to them and cancellation by them of the contracts by reason thereof.

The parties to this action were strangers. The dealings between them arose out of three contracts executed by three several brokers in the city of New York and correspondence thereafter had between the parties.

The three contracts are in the same general form save as noted. They are dated respectively December 16, December 27, December 30, 1919.

The contract of December 16 was made by M. Heineman & Co. of New York, is number 94194B, and is as follows:

" Sold for account of Berkshire Cotton Mfg. Co.— To Sol. Cohen & Co. 121 Bleecker St., N. Y.— Quantity 1000 pcs. All combed plain. Cuts about 60 yards, woven double as far as practical. In addition, Buyer to take Tailings, not to exceed 10 per cent, if contract is not renewed. In addition Buyer to take seconds, not to exceed 5 per cent, at 5c per yard, less than contract price.

" Count 96 x 120
" Width 38"       picks to the inch
" Weight not lighter then 5.90      Inches
" Quality 1st      yds. to the pound
" Price 49½c      cents per yard
" Terms 10 days
" Delivery F. O. B. Mill
" 6 to 8% weekly begin in June, 1920
" Shipping directions.      Later.
" If the production of the Berkshire Mills shall be curtailed during the above named time by strikes, lockouts or any other unavoidable casualty, the deliveries shall only be made proportionate to the production.

            " M. HEINEMAN & CO.
                      " Brokers."

The contract of December 27, numbered 10314, was in same form through one Lowinson, a broker, save only the number of pieces was 500, the price 52 cents per yard and " To be shipped. Hold covered by insurance until ordered shipped."

The contract of December 30, through Pray, Small & Day, brokers, numbered No. 244, was same in form as the contract of December 16th save, under quantity which is 500 yards, delivery F. O. B. Mill 6% to 8% weekly starting July first to fifteenth 1920. Goods held covered by Insurance. Net weight of Bale on Invoice. Date of contract on Invoice.

Between June 5th and 25th five invoices of goods were made under the contract of December 16th aggre-

gating 15,041¼ yards, the price $7,445.43 and 5,988½ yards, the price $3,203.74, the shipments were made in July and were paid-for in due time. On June 28th and July 12th, due to the depression in business, shipments having been made in the meantime, defendants asked plaintiff to postpone deliveries and plaintiff consented to do so. Nevertheless plaintiff made seven shipments during July and seven shipments in August. In September defendants were behind in payments. Plaintiff granted an extension on three invoices of September until November 1, 8 and 15.

October 15th plaintiff had in its warehouse 26 bales of goods, four bales had been paid for, on eight bales payment was overdue, the remaining fourteen, the time of payment had been extended. One additional bale was owing for by defendants. The amount owing by defendants on account of such bales was $14,015.82.

October 15th defendants ordered immediate shipment of eleven bales specifying the numbers thereof which were bales for which extension of credit had been granted. Plaintiff notwithstanding the extension granted declined to ship them because of defendants' unpaid account or to ship any goods until it received a check. Upon the trial the treasurer of plaintiff testified he held the goods and intended to do so until they were paid for. Defendants thereupon wrote plaintiff, " As you decline to ship the merchandise requested in accordance with our instructions although the time of payment has not yet arrived, we hereby deem your refusal to be a repudiation of our order and accordingly we hereby cancel the said merchandise consisting of thirteen bales," giving number of same. The eleven bales were a part of the thirteen bales, the subject-matter of this action, the purchase price of which plaintiff, as hereinbefore stated, sought to recover under a complaint for goods sold and delivered, though concededly the goods were not actually delivered.

The fundamental questions to be determined upon this

appeal are (A) whether title to the bales of goods in controversy passed from the plaintiff seller to defendants buyers; (B) the correctness of the reasons assigned by the Appellate Division for a reversal of the judgment of the Trial Term.

We shall consider the questions in the order stated. The plaintiff is engaged in the manufacture of goods of the character described in the contracts made between the parties. Defendants are converters or finishers, *i. e.*, after the goods are manufactured they are shipped by the buyer from the mill of plaintiff to another mill to be bleached and dyed at the expense of the buyers, defendants, and presumably from there to the purchaser of the finished goods. The contracts between the parties were, therefore, for " future goods " which is defined to mean " goods to be manufactured or acquired by the seller after the making of the contract of sale." (Personal Property Law [Cons. Laws, ch. 41], section 156.) Whether it is for the buyer to take possession of the goods or for the seller to send them to the buyer is a question depending in each case on the contract, express or implied, between the parties. (Personal Property Law, section 124, subd. 1.)

Unless a different intention appears the rule for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer is to be ascertained is prescribed by rules stated by the legislature. (Personal Property Law, section 100.) By rule four of that section it is provided: Where there is a contract to sell " future goods " by description and goods of that description and in a deliverable state are unconditionally appropriated to the contract by the seller with the assent of the buyer, the property in the goods thereupon passed to the buyer. Such assent may be expressed or implied, and may be given before or after the appropriation is made.

In the instant case two of the contracts provided the

24

goods were to be covered by insurance until ordered
shipped. Each contract provided that shipping directions
were to be furnished by defendants, but the time within
which the directions were to be furnished was not speci-
fied. The foregoing provisions of the contracts have a
material bearing upon the intention of the parties. Had
it been the intention of defendants that title to the
goods was to remain in the plaintiff, why did they pro-
vide in their contracts that the goods were " to be held
covered by insurance until ordered shipped? " A loss
of the goods by fire in the mill of plaintiff would not
affect them if the title to the goods was to continue in
the plaintiff.

The invoices from time to time sent defendants by
plaintiff had thereon the words: " Held for directions
covered by insurance," showing compliance on its part
with the requirement imposed by defendants in the
contracts. Defendants, business men as they are, pre-
sumably were aware that title to property destroyed
by fire is essential to recovery of insurance against such
loss. Their manifest intention was to be protected against
loss of the goods by fire awaiting shipment in the ware-
house of plaintiff. Plaintiff as matter of fact did insure
the goods for the benefit of defendants. The correspond-
ence between the parties disclosed that on several occa-
sions, due to depression in business, plaintiff at request
of defendants postponed shipments of goods. In the
meantime the goods were stored in the warehouse of
plaintiff. But one inference can reasonably be deduced
from the foregoing facts, namely, that the goods were
in a deliverable state, that the same were unconditionally
appropriated to the contract by the seller, with the
assent of the buyers. The fact that the goods were to
be F. O. B. at mill is immaterial in view of the contract
and intentions of the parties. It is further urged that
the extension of credit granted defendants defeated a
right of action in plaintiff for the reason that at the

time defendants ordered the bales of goods shipped the extension had not expired; therefore, defendants were justified in rescinding the contracts.    We cannot acquiesce in the suggestion.

At the time defendants demanded a delivery of goods they were in default with reference to payments for earlier installments.    Plaintiff, therefore, was justified in suspending deliveries until the earlier installments had been paid for in accordance with the contract.    (1 Williston Contracts, section 869, page 1666; *National Contracting Co. v. Vulcanite P. C. Co.*, 192 Mass. 247–255.)

We pass to a consideration of alleged error committed on the trial and the reasons prompting a reversal of the judgments of the Trial Term.

Upon the trial plaintiff offered evidence as to the manner in which the goods were manufactured, inspected, measured, counted, baled, yardage computed and that each bale put up is marked, the number of yards contained therein and a tag is placed on that bale, the bale numbered, and the same carried to the storeroom. Witness was then asked: " Q. Explain what is done towards allocating them or apportioning them to the contract.    Counsel for defendants objected to the question as incompetent, irrelevant and immaterial and not within the issues of this case.    This is an action for goods sold and delivered and I submit that any attempt to prove a delivery by appropriation is highly improper and not within the issues.    [Objection was overruled and exception noted.]    By the Court: Q. Just take this contract, the first contract, were those bales designated there set aside to cover this contract?    A. Yes.    Q. Were they set aside in such a way as to keep them separated from all other goods?    A. No.    Q. I mean a separate package?    A. Oh, separate package, yes."

Witness then was permitted to go over all invoices under the three contracts and state that each one had been in like manner separated.

The trial justice denied defendants' motion to go to the jury and granted plaintiff's motion for judgment on the ground that when the goods were separated and put apart, under the statute, the title passed, and plaintiff was not compelled to deliver one lot when another lot was not paid for. Exceptions were duly taken by defendants' counsel.

The Appellate Division reversed the judgment upon the ground that as the complaint alleged a sale *and delivery* of the goods, the right of recovery was, therefore, based on an actual delivery and no allegation appears in the complaint showing a symbolic · delivery; that the trial justice committed error in permitting plaintiff to prove facts to show that the title to the goods passed without actual delivery, and in permitting proof of the allocation of the goods in question by the plaintiff; that as the Personal Property Law has changed the common law it is now necessary, in the absence of an actual delivery, to plead under the statute the facts with reference to identification and appropriation of goods to the contract, citing *Bready* v. *Wechsler Co., Inc.* (200 App. Div. 78); *Robison & Co., Inc.,* v. *Kram* (195 App. Div. 873); *American Aniline Products, Inc.,* v. *Nagase & Co., Ltd.* (187 App. Div. 555).

The opinion also calls attention to the case of *Boiko & Co., Inc.,* v. *Atlantic Woolen Mills, Inc.* (195 App. Div. 207), and to the affirmance by this court, without opinion, of the decision of the Appellate Division in that case, holding that " the title to the three bales of worsted clippings passed to the purchaser when the worsted clippings were sorted, made into a bale and put in deliverable shape and the three bales set aside and tagged, and that thereafter the seller might maintain an action for the purchase price if the purchaser wrongfully refused to pay. And we are told in the brief of the plaintiff, respondent, that the complaint in that case, as in the case at bar, was in the conventional form for goods sold and delivered. An

examination of the opinions rendered by this court (Appellate Division) in the *Boïko & Co.* case clearly shows that when the case was heard and decided here, the question of pleading was not considered. If the complaint in that case was open to the objection raised to the complaint in the case at bar, and had our attention been directed to the faulty pleading, we undoubtedly would have held in accord with our earlier decisions," referring to the decisions above cited in the opinion upon which the reversal was founded.

In the *Boïko* case at the Appellate Division the author of the opinion in this case did not sit or participate in the decision of the case. Two opinions were delivered, the prevailing opinion written by Justice PAGE, a dissenting opinion by Justice SMITH in which Justice DOWLING concurred. In the prevailing opinion frequent reference is made to the opinion of Justice SMITH and cases cited therein distinguished. We must assume that the members of the court carefully considered the two opinions before reaching a conclusion. On pages 213–214 of the reported case appears the following in the dissenting opinion. " The plaintiff has brought this action for goods sold and delivered, although confessedly there has never been any actual delivery of the goods, or any other delivery than could be implied from the baling of these goods and setting them aside for the defendants' order. The judgment asked and recovered is for the purchase price of the goods. The contention of the defendant appealing is that the title in the goods never passed and, if any liability exists, the liability is only for failure to accept the goods." Again on page 217 the opinion states, the plaintiff " bases its right to recover solely upon the fact that title to the goods had passed to the purchaser by reason of the selection made by the buyer and the setting apart of the goods appropriated and tagging the same as the goods of the purchaser." The final paragraph of the opinion, page 224, is as follows:

" Inasmuch, therefore, as the complaint states an action for goods sold and delivered, and as no delivery is proven, and as no property has passed to the purchaser under the Personal Property Law, and as there is no allegation in the complaint that the goods could not readily be resold for a reasonable price, the determination and judgment should be reversed and the complaint dismissed   *   *   *."

The prevailing opinion omits a reference to the pleadings and sustained the recovery by plaintiff under the provisions of the Personal Property Law.

The excerpts from the dissenting opinion indicate clearly that the fact that the complaint in the *Boiko* case was one for goods sold and delivered, while the proof disclosed only a symbolic delivery was decisively brought to the attention of the justices of the Appellate Division, and considered by them. When the case reached this court the prevailing and dissenting opinions constituted a part of the record and clearly presented the diverse views expressed by the justices writing at the Appellate Division and were given due consideration in this court.

While a complaint alleging the facts disclosing a delivery of the goods by allocation of the same, rather than in language implying an actual delivery, would have been a more appropriate pleading defendants were not misled as they had knowledge that actual delivery had not been made, and were at liberty to demand or apply for a bill of particulars as to the times and manner of the alleged delivery and to prepare to meet the claims of plaintiff on the trial. The record does not disclose that such or any bill of particulars was demanded or served.

In closing this opinion attention should be called to the fact that the case of *Bready* v. *Wechsler Co., Inc.* (200 App. Div. 78), cited in the opinion of the Appellate Division, was affirmed by this court (235 N. Y. 539).

The affirmance, however, was placed upon a ground unrelated to the supposed defect of pleading.

The defendants having conceded their indebtedness to plaintiff in the sum alleged in the complaint and for which amount the trial justice directed judgment with interest thereon, the judgment of the Appellate Division should be reversed and the judgment of the trial court reinstated, with costs to appellant in this court and the Appellate Division.

HISCOCK, Ch. J., CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur; POUND, J., dissents.

Judgment reversed, etc.