WILLIAM A. TAYLOR and Others, as Copartners, Composing the Firm of TAYLOR, CLAPP & BEALL, Appellants, v. MAX KURZROK and Another, Respondents.

First Department, October 30, 1925.

Sales — action to recover purchase price of cloth — goods were ordered deliverable to defendants' place of business — subsequently defendants requested plaintiffs to notify them when goods were ready for delivery and hold for instructions — plaintiffs notified defendants when goods were ready for delivery — shipping instructions were not given — subsequent agreement made plaintiffs' place of business place of delivery under Personal Property Law, § 124 — goods were unconditionally appropriated to contract under Personal Property Law, §§ 100 and 124 — title passed under Personal Property Law, § 100, as soon as goods were appropriated to contract — plaintiffs had right to resell and sue for difference under Personal Property Law, § 141, subd. 1, and § 144, subd. 1.

In an action to recover the purchase price of goods sold to the defendants, less a credit on a resale of goods by the plaintiffs, in which it appears that the original contract provided for delivery at the defendants' place of business, but that subsequently the defendants requested the plaintiffs to notify them when the goods were ready for shipment and to hold the goods for instructions, the effect of the subsequent agreement was to make the plaintiffs' place of business the place for delivery, and since the plaintiffs notified the defendants that the goods were ready for delivery on their shipping instructions, there was an unconditional appropriation of the goods to the contract within sections 100

and 124 of the Personal Property Law, and title to the goods passed to the defendants under section 100 of the Personal Property Law as soon as they were appropriated, and, therefore, the plaintiffs had the right under subdivision 1 of section 141 and subdivision 1 of section 144 of the Personal Property Law on defendants' default in giving shipping instructions to resell the goods and maintain this action for the price thereof, giving the defendants credit for the amount realized on the resale.

APPEAL by the plaintiffs, William A. Taylor and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 6th day of November, 1924, upon the dismissal of the complaint at the close of the entire case.

The action was brought to recover the purchase price of goods upon the basis that no delivery was required at a particular place and that title had passed by an unconditional appropriation of specific goods to the contract with the assent of the buyers. The trial justice held that no title had passed and that consequently the plaintiffs' claim was for damages for breach of contract to accept delivery. He dismissed the complaint without prejudice to the right to bring a new action to recover damages other than upon the ground that title to the goods had passed to the buyers by constructive delivery.

Nainsook, the merchandise involved in this action, is an article of cotton goods in general use. It is made in the gray by the mills. It is bleached and converted into the finished article at a bleachery which is distinct from the manufactory. It is made by the mills in pieces of differing widths at about sixty yards in length. In the process of bleaching and converting there is a shrinkage which is not uniform so that the length of each piece cannot be ascertained until it is measured after the converting has been completed. Each piece is measured at the bleachery and tagged with its length in yards, and the pieces are packed in a case and a list of the yardage of the several pieces is inclosed showing the number of pieces and the total yardage and the case is then marked with a distinguishing number. In the trade these goods are delivered and accepted upon the figures furnished by the bleachery.

The cases are of uniform size, but the number of pieces and the number of yards that each case may contain is not a fixed quantity, but would average about fifty pieces to the case and about sixty yards to the piece. Whether it was more or less the sellers would deliver the particular cases and the buyers would pay for the exact number of yards in these particular cases by the bleachery measurements.

The plaintiffs did not manufacture these goods. They bought

them in the gray from the mills and had them converted at a bleachery and sold the finished product to the customers. The defendants were manufacturers of garments and bought material from the plaintiffs.

On January 30, 1920, defendants gave plaintiffs an order for ten cases of *nainsook, No. 92,* as follows:

" Purchase order.   Order No. 197.

" MAX KURZROK & CO.:

" The above number must appear on your invoice and on all packages.

" Dept. Underwear

" NEW YORK, *Jan.* 30, 1920.   To Taylor, Clapp & Beall.

" Terms 2/10 60          Address 109 Worth St.

" F. O. B. our office.

| " Merchandise | Description of merchandise | Quantity | Price |
|---|---|---|---|
| " Number 92 | 5 cases nainsook | 5 cases | 35 |
| | 5 cases nainsook | 5 cases | 35 |
| 30/31 inches. | | | |

Delivery as follows:
5 cases June 1920
5 cases July 1920

" MAX KURZROK & CO.,

" L. K. BENNETT,

" *Buyer.*"

The goods were sold by sample. The description refers to the plaintiffs' sample number. The price was thirty-five cents a yard, the width 30/31 inches. Delivery was to be made at defendants' office in New York city, five cases in June and five in July, 1920. The terms were 2/10/60 which means a discount of two per cent on the purchase price to become payable ten days after sixty days after the goods were invoiced.

On February 9, 1920, the defendants gave a similar order for ten cases of No. 92 and ten cases of No. H-36. The price for No. 92 was thirty-five and one-half cents a yard and for No. H-36, forty-five and one-half cents a yard. Five cases of each kind were to be delivered in June and five cases of each kind in July, 1920.

On May 14, 1920, the defendants wrote plaintiffs and asked them to change the record of these orders so that ten cases of No. 92 and five cases of No. H-36 should be delivered in July and the same number in August.

On June 5, 1920, the defendants wrote plaintiffs as follows:

" Please do not make any shipments to us without first notifying us that you are ready to ship merchandise. At that time we will instruct you where and how to ship."

On June 7, 1920, the plaintiffs wrote that they would comply with this request.

On July 1, 1920, the plaintiffs had the July installment ready for delivery. They notified the defendants by sending an invoice of each lot of five cases in which invoice each lot of 48/50 pieces is identified by a case number, the number of yards in each case is given, the price figured out on the total yardage with the two per cent discount deducted. In each invoice it is stated that the goods are held for shipping instructions. The defendants are also advised in each invoice that " Goods sold and not removed are covered by insurance to the same extent and subject to the same conditions as our own."

These goods were held until July eighth, when the plaintiffs received instructions by letter to ship them to Porto Rico. This letter contains the following reference to the goods: " With further reference to our telephone conversation of even date, you can follow the shipping instructions below on merchandise now holding for our account:"

The July goods were accordingly shipped to Porto Rico and were paid for.

On August 2, 1920, the plaintiffs had the August installment at their store in New York ready for delivery. They notified the defendants by sending invoices of each lot of five cases.

These invoices were similar to those sent in July. In each invoice it is stated that it completes the respective order of January 30, 1920, or February 9, 1920, and that the goods are held for shipping instructions.

On receiving the August invoices the defendants wrote plaintiffs that the deliveries were late and that they did not feel obligated to take goods when they were late and they returned the invoices.

The letter reads:

" *August 2nd,* 1920.

" Messrs. TAYLOR, CLAPP & BEALL,
           " New York City:
           " Attention of Mr. Clark

" DEAR SIRS.— Enclosed find your bills of August 2nd for $5,666.16, $5,516.47 and $7,033.74. These goods are all late and we authorize you to credit us with these amounts. We do not feel obligated to take goods when they are late.

           " Very truly yours,
             " MAX KURZROK & CO."

It is evident defendants overlooked or failed to remember the fact that the dates of delivery had been changed to August at the defendants' own request in the letter dated May 14, 1920, reading as follows:

" TAYLOR, CLAPP & BEALL,
" 109 Worth Street,
" New York City:

" GENTLEMEN.— We ask you to fix your records on our order of January 30th for Quality 92 — 30 inch Nainsook, to read 5 cases July and 5 cases August.

" We also ask you to fix our order of February 9th, your quality 92 Nainsook, to read 5 cases July, and 5 cases August. On the same order of February 9th we ask you to fix your records to read 5 cases July and 5 cases August.

" Kindly acknowledge this letter.
" Very truly yours,
" MAX KURZROK & CO.
" By LEO N. KURZROK."

Plaintiffs immediately on receipt of the defendants' letter of August 2, 1920, called attention to the defendants' error in a letter dated August 3, 1920, reading as follows:

" TAYLOR, CLAPP & BEALL,
* * *

" Messrs. MAX KURZROK & Co.,                    " *Aug. 3rd*, 1920.
" 11 East 26th Street,
" New York:

" GENTLEMEN.— In response to yours of the 2nd inst. in reference to cancelling the inclosed bills, we wish to call your attention to your letter of May 14th requesting us to defer deliveries, which we did.

" Therefore, we will not accept any cancellations.
" Very truly yours,
" TAYLOR, CLAPP & BEALL."

The invoices were returned by plaintiffs to defendants and were retained by the defendants who produced them upon the trial. No further objection to the invoices was ever made or other notice of repudiation given except that the defendants gave no shipping instructions and did not pay for the goods when payment was due in October.

On December 17, 1920, the account had been overdue for two months. Plaintiffs' attorneys notified the defendants that they would be sold if not paid for. On December 28, 1920, defendants'

attorneys wrote that they would confer within a day or two. Nothing was done and on January 22 and February 1, 1921, plaintiffs sold the goods for the best prices obtainable and subsequently brought this action to recover the purchase price after deducting the amounts received on the sales.

The trial justice dismissed the complaint and gave judgment for defendants as above stated.

*Halsey & O' Keeffe* [*John R. Halsey* of counsel], for the appellants.

*Rosenson & Lorence* [*Harry J. Rosenson* of counsel], for the respondents.

BURR, J.:

The only question in this case is whether there was an unconditional appropriation of the goods to the contract by the sellers with the assent of the buyers without a requirement to deliver the goods to the buyers or at a particular place.

The contract by its terms and the understanding of its terms by the parties as evidenced by their conduct in connection with the delivery of the first installment in July clearly indicate the buyers understood that the sellers should appropriate specific goods to the contract and notify the buyers that these goods were appropriated and ready for orders for shipment, and were to hold the goods for the account of the buyers until the sellers received directions where and how to make the shipment.

No dispute arose regarding the carrying out of the first half of the contract by the delivery of the installments in July.

The sellers appropriated fifteen particular cases of goods to the contract. Instead of delivering or tendering them at the buyers' office, the sellers, in compliance with the specific request of the buyers in the letter of June fifth, billed them to the buyers with notice that they were held for shipping instructions. When the shipping instructions came, the sellers were instructed to ship to Porto Rico. This was done. The invoices were paid. This was in accordance with the terms of the letter of June 5, 1920, and not ot the original terms of the contract. It is apparent that both the sellers and the buyers understood that actual delivery was to be made in accordance with instructions to be given by the buyers as to where and how to ship. That the buyers understood the sellers had appropriated these cases to the contract and that they had thereupon become the buyers' goods to be disposed of by their orders is further shown by the fact that in the letter to the sellers giving shipping directions they refer to the goods as " *merchandise now holding for our account.*"

The contracts were undoubtedly altered in respect to the delivery.

The buyers directed the sellers not to ship them when ready but to await instructions "where and how to ship." (Defendants' letter dated June 5, 1920.)

This abrogated the provision of the contracts that delivery should be made to the buyers. The sellers acceding to this change the contracts no longer contained a requirement of delivery to the buyers or at a particular place. The place of delivery became the sellers' place of business. (Pers. Prop. Law, § 124, as added by Laws of 1911, chap. 571, known as the Sales of Goods Act.)

It is clear that the shipping orders were to be given after the goods were ready for actual delivery.

Under these circumstances the property in the goods passed to the buyers as soon as the goods were appropriated to the contract and the buyers notified. (*Berkshire Cotton Mfg. Co. v. Cohen*, 236 N. Y. 364; Pers. Prop. Law, § 100, as added by Laws of 1911, chap. 571.)

The facts in the case at bar are simpler than those in the *Berkshire Case* (*supra*). Here, the contract as modified at the buyers' request expressly and unmistakably provides that when the goods are ready for actual delivery they are to be held for shipping instructions which are not to be given until after the goods are ready.

The facts in this case show there was an unconditional appropriation of these goods in a deliverable state to the contract by the sellers, which appropriation was assented to by the buyers. (Pers. Prop. Law, § 100, rule 4, subd. 1, as added by Laws of 1911, chap. 571; Id. § 100, rule 5, as added by Laws of 1911, chap. 571; Id. § 124, subd. 1, as added by Laws of 1911, chap. 571.)

The plaintiffs are unpaid sellers (Pers. Prop. Law, § 133, subd. 1, as added by Laws of 1911, chap. 571), they had a lien on the goods for the price (Pers. Prop. Law, § 135, subd. 1, as added by Laws of 1911, chap. 571) and if the buyers were in default an unreasonable time plaintiffs had a right to resell the goods and maintain an action against the buyers for the price thereof, giving the buyers credit for the amount realized on such resale. (Pers. Prop. Law, § 141, subd. 1, as added by Laws of 1911, chap. 571; Id. § 144, subd. 1, as added by Laws of 1911, chap. 571.)

The judgment appealed from should, therefore, be reversed and a new trial ordered, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING and MERRELL, JJ., concur; FINCH, J., concurs in result.

Judgment reversed and new trial ordered, with costs to the appellants to abide the event.