### GOODYEAR TIRE & RUBBER CO. v. NORTHERN ASSUR. CO., LIMITED.

### No. 467.

Circuit Court of Appeals, Second Circuit.

Aug. 2, 1937.

Davies, Auerbach & Cornell, of New York City (Martin A. Schenck, Orrin G. Judd, and Herbert A. Heerwagen, all of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (D. Roger Englar, George S. Brengle, and James N. Senecal, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the defendant insurance company from a judgment against it in an action upon its "inland transit floater policy" issued to the plaintiff, covering losses on merchandise "shipped by or to the assured * * * or in which they may have an interest." The claimed loss relates to several hundred tons of crude rubber in bales destroyed or damaged by fire on May 3, 1934, while the rubber was on Pier 38, Brooklyn, N. Y. With respect to crude rubber the policy contained a specific provision, reading as follows: "It being specially understood with respect to shipments of crude rubber and similar goods not covered under assured's import policy, this policy is to attach from the moment these goods become at the assured's risk within the geographical limits of the United States, * * * whether before or after issuance of bill of lading, and to cover continuously until reaching destination as provided, including risk on docks, quays, wharves, piers and/or bulkheads, loading sheds, depots, stations, platforms or elsewhere on shore awaiting shipment."

The main question in dispute is whether the rubber involved in this litigation had "become at the assured's risk" at the time of the fire. It was purchased by the plaintiff under written contracts with H. A. Astlett & Co., Robert Badenhop Corporation, and Mitsui & Co., Limited, respectively, but the rubber purchased from Mitsui may be disregarded, as no recovery for loss with respect to it was included in the judgment appealed from. The contracts were in substantially the same form and contained the following provisions:

"Place of Delivery: New York City

"Terms: Net cash 30 days from date of delivery at New York City

"F.O.B. Cars New York City

"Inspection at New York City Final Weights at Akron, Ohio

"Invoices in triplicate to be mailed to our New York office, 25 Beaver St."

On April 26, 1934, the steamship Raby Castle arrived at the port of New York, having on board bales of crude rubber covered by bills of lading in favor of Astlett & Co. and Badenhop Corporation, who, prior to May 2d, surrendered their respective bills of lading and completed all formalities incident to entry of the merchandise. Upon arrival of the steamship, the rubber was discharged onto Pier 38 and it remained in the original piles as unloaded until the fire occurred on the afternoon of May 3d. After its discharge, the respective sellers delivered to the plaintiff "delivery orders" directing the steamship's delivery clerk on the pier to deliver to Goodyear certain bales of rubber specified by mark and number. On May 2d Goodyear's agent inspected the rubber covered by the delivery orders, accepted it as to quality, and orally notified the sellers of his approval. Thereupon they mailed invoices to Goodyear's New York office, and these were paid by Goodyear on June 1st with knowledge of the fire and resulting loss. The delivery orders had not been presented by Goodyear to the delivery clerk, nor handed to any carrier, prior to the fire.

Over the defendant's objection, evidence was introduced as to the practice of the parties in prior dealings under the same form of contract. The uniform practice was for Goodyear, after the rubber had been inspected and approved as to quality by its agent O'Brien, to turn the delivery orders over to its traffic department, which would make arrangements for shipment of the rubber to Akron and

hand the delivery orders to the proper railroad. The sellers had nothing to do after O'Brien's approval of the rubber except to send the invoices, and Goodyear's practice was to pay them within 30 days without any inquiry as to whether the goods had been shipped by railroad to Akron. Rubber from Pier 38 was never shipped out by rail; it was taken by lighter to Jersey City and there loaded on cars.

The defendant contends that under the terms of the contracts of purchase title was not to pass until delivery "F.O.B. Cars New York City," and, since no delivery had been made to a carrier, the risk of loss by fire was still on the sellers and so was not within the coverage of Goodyear's insurance policy. It is elementary that when title passes is a matter of intention between buyer and seller. The rule that under a contract calling for delivery f.o.b. a particular point title to the goods passes on delivery to a carrier at that point is merely one of presumption "unless a different intention appears." New York Personal Property Law (Consol. Laws, c. 41), § 100; Standard Casing Co. v. California Casing Co., 233 N.Y. 413, 416, 419, 135 N.E. 834; Rosenberg Bros. & Co. v. Buffum Co., 234 N.Y. 338, 343, 137 N.E. 609; Berkshire Cotton Mfg. Co. v. Cohen, 236 N.Y. 364, 370, 140 N.E. 726; Williston, Sales (2d Ed.) § 280b. In the case at bar New York City was specified as the "Place of Delivery," and the f.o.b. provision was not put under that caption, where one would naturally expect to find it if it were intended to indicate the point at which delivery was to be complete. Instead, the f.o.b. provision was placed under the heading "Terms," where it would seem to have relation to price and to indicate that the cost of loading on cars was to be borne by the seller but the loading was not to affect the time when the purchase price was to be paid, namely, "30 days from date of delivery at New York City." See Pond Creek Mill & Elevator Co. v. Clark, 270 F. 482, 486 (C.C.A.7). Even if this meaning were otherwise doubtful, the conduct of the parties with respect to a long course of similar transactions would make it plain. When the rubber was discharged on the pier, delivery orders for identifiable lots were given to the buyer, who examined and approved the goods as conforming to the contracts, made arrangements for removal by lighter and shipment by rail in New Jersey, and paid the invoices within 30 days without reference to where the rubber was or whether it had been loaded on board cars. When the delivery order was handed to Goodyear, the merchandise was definitely appropriated to the contract and no further act with respect to the goods remained to be done by the seller; thereafter everything was to be done by the buyer. We think it clear that title was intended to pass at least as soon as Goodyear examined and approved the goods as to quality; hence they were at Goodyear's risk when the fire occurred on May 3d.

The defendant contends further that the rubber was excluded from the plaintiff's inland transit policy because it was within the coverage of the plaintiff's import policies. To come within their coverage it had to be "in storage" in and about New York Harbor. While lying on the pier awaiting shipment to Akron, it was not "in storage"; it was on a pier "awaiting shipment" and was within the express coverage of the policy sued on.

Judgment affirmed.