## ELY & WALKER DRY GOODS CO. v. ADAMS MFG. CO., Inc.
### No. 389.

Circuit Court of Appeals, Second Circuit.
July 10, 1939.

Louis L. Tetelman, of New York City (Miller & Miller and Mathilda D. Miller, all of New York City, of counsel), for creditor-appellant.

Benjamin Siegel, of New York City (Benjamin Brownstein, of New York City, of counsel), for trustee-appellee.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

CLARK, Circuit Judge.

The creditor here appeals from the denial by the bankruptcy referee, affirmed by the District Court, of its petition for an order either directing the bankruptcy trustee to turn over to it goods for which it had paid in advance, and which the bankrupt was to manufacture for it, or declaring merchandise in the possession of the trustee subject to an equitable lien for $2,163.04, the value of the goods promised to it, but undelivered, by the bankrupt. The referee and the court decided adversely to the creditor, on the grounds that the goods were not ascertained and appropriated to the fulfillment of the contract of purchase at the time proceedings to reorganize the debtor were instituted, and hence the property in the merchandise had not then passed, and further that there were no goods set aside for the purpose of the contract to which a lien might attach. On this appeal, the creditor renews its claims that property in the goods had passed before the proceedings or in any event that the trustee had possession of goods which would satisfy the contract and hence were subject to its lien.

The goods thus sought to be reclaimed are 986 pieces of white "gnat net" or mosquito netting which the debtor was to manufacture from yarn for the creditor. This amount is an undelivered balance of a larger order. The original order dated St. Louis, Mo., November 16, 1936, was accepted by the debtor in New York City on November 27, 1936, and called for 2,480 pieces of 60-inch gnat net, 24 yards each, of which 2,000 pieces were to be white, 180 pieces black, and 150 each red and green. Payment in full, less the discount agreed, was made in January, 1937. Parts of the order were shipped from time to time as the creditor requested until May 10, 1937, when, with the 986 pieces in question remaining undelivered, the debtor filed its petition for reorganization. The debtor was continued in possession of its assets, but it shipped no more merchandise to the creditor. On September 30, 1937, liquidation of the debtor was ordered, and subsequently a trustee in bankruptcy was elected and qualified. It now opposes the creditor's petition.

The evidence is clear that on May 10, 1937, no goods corresponding to the creditor's order were segregated or held in storage for it by the debtor. Nor were there any goods found or inventoried by it in its factory which fully answered the description except 120 pieces included in two lots of 96 and 24 pieces each. All the other items in the inventory were either 8-yard pieces or merchandise not cut into lengths at all. The creditor's claim is based upon its assertion that the length of the pieces was unimportant and upon the fact that the white mosquito netting already manufactured and of 60-inch width which was then found in the storehouse or in the finishing or packing or weaving department of the debtor's factory was more than sufficient to take care of the part of the order which remained unfulfilled.

The creditor had bought of the debtor for forty years. It was customary for it and various other customers to order and pay for goods in advance of receipt, thereby getting the advantage of a very substantial discount (at the rate of 12 per cent a year for the time involved) and protection for its needs for the coming spring season, while the debtor was able to spread its manufacturing program over several months. Indeed, this particular order was based on past orders. It called for mosquito netting not merely of a particular size and kind, as stated, but also for the putting up of the order with labels and tickets as before, thus: "Put up as E. W. ¾ Mosquito Netting same as put up as last season. Be careful to use same tickets." There were also reiterated directions that the goods were "to be Shipped as Wanted," that they were to be held at the mill and, as a part of the statement specifying the various amounts of each color contracted for: "Bill & Hold at Mill. We will order these as we use." There were also provisions as to anticipation of payments before February 1, to receive the discount, and a final notation, before the signature, "Stock Protection for Season of 1937." Up to ten or twelve years previously, the debtor, on such an order, customarily put the goods ordered in a warehouse and issued a warehouse receipt, but this had been abandoned as a general practice and only an invoice acknowledgment was sent, without the setting aside of particular goods. And so, in this case, the debtor sent only its invoice of November 27, 1936, accepting the order. This contained the notation, "Goods Held in Storage Awaiting Shipping Instructions." As a matter of fact, the goods were not then in storage, and were not manufactured, as the parties knew, and there was evidence that this

notation was placed on the statement by mistake of a clerk not regularly assigned to duty at the debtor's desk.

Under these circumstances we think, with the court below and the referee, that the contract was one to sell future goods by description, and that the property in the goods did not pass until goods answering the description were unconditionally appropriated to the contract. The Uniform Sales Act is in force in New York. By its terms, in the case of a sale by description of "future goods," i. e., "goods to be manufactured or acquired by the seller after the making of the contract to sell" (N. Y. Personal Property Law, §§ 86, 156, Consol.Laws N.Y. c. 40; Berkshire Cotton Mfg. Co. v. Cohen, 236 N.Y. 364, 140 N.E. 726), the rule for ascertaining the intention of the parties as to the passing of property in the goods (unless a different intention appears) is that where "goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller," the property "thereupon" passes to the buyer. N.Y. Personal Property Law, § 100, Rule 4(1). But even had the goods been specific or ascertained, where the seller is bound to do something to put them into a deliverable state, the property in the goods does not pass until such thing be done. Ibid. § 100, Rule 2. Here the terms of the contract, reinforced by the conduct of the parties for ten or twelve years, point to the same result as indicated by the Sales Act (Personal Property Law, § 82 et seq.). The seller had not merely to manufacture the goods according to certain specifications and to appropriate them unconditionally to the contract, but also to put them up in a special way, with tickets bearing the buyer's initials and the name of the goods. These acts not having been performed, the property in the goods—the general ownership, including the risk of loss—was in the debtor, and the creditor has no preferred claim to the merchandise. 1 Williston on Sales, §§ 258, 265, 274.

The cases relied on by the creditor, so far as apposite, such as In re Armour Ash Can Mfg. Co., Inc., 2 Cir., 29 F.2d 671, and Berkshire Cotton Mfg. Co. v. Cohen, 236 N.Y. 364, 140 N.E. 726, are cases where the courts had found, in accord with the rules under the Sales Act, that the goods had been appropriated to the fulfillment of the contract and accepted by the buyer, and nothing remained to be done by the seller to complete his contract.

Nor is there any basis for the creditor's claim to an equitable lien for the value of the goods. This claim is really based on the same grounds as the claim for reclamation and cannot be resorted to as a means of supplying deficiencies of transfer under the Sales Act. No attempt was made at the hearing to trace the $5,440.50 paid by the creditor for its total order in January, 1937, or any part of it. The District Court rightly concluded that "The mere fact that the bankrupt was in possession of raw and finished materials which could have been applied to the contract does not give the petitioner any greater rights than others whose contracts might also have been filled by the identical goods." See Penn Lumber Co. v. Wilson, 4 Cir., 26 F.2d 893; Marshall v. Roettinger, 6 Cir., 294 F. 158, denying such claims for unsegregated goods. The mistake of a shipping clerk that the goods were "held in storage awaiting shipping instructions," a mistake which misled no one, since the parties knew the true facts, cannot be relied on as a declaration of trust to the prejudice of the other creditors.

Affirmed.