DAVE FELDMAN et al., Copartners Doing Business under the Name of UNITED FUR CO., Plaintiffs, v. KEN COATS, INC., Defendant.

Supreme Court, Trial Term, New York County, February 24, 1948.

*Hyman B. Schutzer* for plaintiffs.

*Max Perlman* for defendant.

WALTER, J. On August 20, 1947, plaintiffs agreed to manufacture for and deliver to defendant, and defendant agreed to take and pay for, 127 southern Muskrat cowl hoods at $20 each and 100 such hoods slightly larger in size for $20.50 each. Early in September, 1947, plaintiffs delivered 60 of the hoods to defendant at its place of business. Defendant complained of the workmanship of some of those delivered and plaintiffs took back 30 of them, insisting, however, that there were no justifiable complaints and even denying that such complaints were in fact made.

Plaintiffs completed the manufacture of the entire 227 hoods by about September 17th, and since then have been ready, able and willing to deliver the 197 undelivered, and have requested defendant to take and pay for them. Defendant repeatedly told plaintiffs that it eventually would do so but nevertheless has not done so.

On November 28, 1947, plaintiffs notified defendant that the 197 hoods undelivered had been placed in storage in a designated warehouse for defendant's account for safekeeping; and plaintiffs have continued to keep the hoods there except a few brought to court for use as exhibits upon the trial of this action. Defendant has not accepted or paid for any of the 197 hoods,

and has not even examined or inspected them. It made no response to plaintiffs' notice that they had been placed in storage for its account.

The total agreed purchase price was $4,590. Defendants have paid only $597, and plaintiffs sue for the balance of $3,993. Despite the allegation of damage in paragraph eighth of the complaint, the other allegations therein and the course of the trial, including, particularly, the failure to offer any evidence of damage, all combine to show that this is an action for the price and not an action for damages.

Defendant's claim that the hoods were not manufactured in accordance with the agreement and the samples is not sustained by the evidence; and likewise unsustained is the claim that when defendant insisted upon returning thirty of the sixty hoods delivered plaintiffs cancelled or rescinded or waived the contract.

The substantial and sole question, therefore, is whether or not under the circumstances disclosed plaintiffs may maintain an action for the price — a question which neither counsel in this case has seen fit to brief.

Until the enactment of the Uniform Sales of Goods Act in 1911 (Personal Property Law, art. 5, §§ 82–158), the law of New York was that the seller of personal property had a choice between three remedies against the buyer in default: (1) keep or store the goods for the buyer and sue for the entire purchase price; (2) keep the goods as his own and recover the difference between the contract price and the market price; (3) resell the goods as agent of the buyer and recover any resulting deficiency (*Van Brocklen* v. *Smeallie,* 140 N. Y. 70, 75; *Ackerman* v. *Rubens,* 167 N. Y. 405, 408; *Moore* v. *Potter,* 155 N. Y. 481, 486; *Dustan* v. *McAndrew,* 44 N. Y. 72, 78; *Hayden* v. *Demets,* 53 N. Y. 426, 431; *Gross* v. *Ajello,* 132 App. Div. 25, 27; *Security Title & Trust Co.* v. *Stewart,* 154 App. Div. 434; *Glass & Co.* v. *Misroch,* 239 N. Y. 475, 479; *Agar* v. *Orda,* 264 N. Y. 248, 250).

But under the Sales Act (L. 1911, ch. 571; Personal Property Law, art. 5, §§ 82–158) the seller can maintain an action for the price only where the property in the goods has passed to the buyer (Personal Property Law, § 144, subd. 1) or where the price is payable on a day certain irrespective of delivery or of transfer of title (§ 144, subd. 2) or where the goods cannot readily be resold for a reasonable price and after the buyer refuses to receive the goods the seller notifies the buyer that they are thereafter held by the seller as bailee for the buyer (§ 144, subd. 3).

In the case at bar there is no evidence of any agreement that the price was to be paid on a day certain irrespective of delivery or transfer of title, and no evidence that the goods could not readily be resold for a reasonable price. On the contrary, as these hoods were to be used as trimmings on ladies' coats and there is no evidence that there was anything particularly special or unique about them. I think it must be found that they could readily be resold for a reasonable price.

Whether or not plaintiffs can maintain this action for the price thus depends upon whether the property in the goods has passed to the buyer (see *Glass & Co.* v. *Misroch*, 239 N. Y. 475, 479, *supra*).

To determine that we turn to the statutory rules for ascertaining the intention of the parties, there here being no evidence of an intention different from what the statute declares (Personal Property Law, § 100).

The contract here was to sell goods to be manufactured, i.e., unascertained or future goods (Personal Property Law, § 86) by description and by sample. Goods of that description in accordance with the sample and in a deliverable state were unconditionally appropriated to the contract by the seller; and under rule 4 in section 100 the property in the goods passed to the buyer provided the seller's appropriation of the goods to the contract was with the assent of the buyer. Such assent, the statute expressly provides, may be expressed or implied; and the view that there is no such assent until the buyer has so manifested his approval of the quality of the goods as to preclude him thereafter from giving notice of rescission, was specifically rejected in *Glass & Co.* v. *Misroch* (239 N. Y. 475, 480, *supra*) wherein it was further said that assent to appropriation signifies, not acceptance so definitive and deliberate as to bar rescission for defects, but the buyer's willingness to take as his own the goods appropriated by the seller, subject to rescission and return if defects are afterwards discovered.

Application of that test is somewhat difficult in the case at bar because defendant never has examined or seen the hoods which plaintiffs appropriated to the contract by placing them in storage and notifying defendant that they were in storage for it; but mere silence on the part of the buyer after being notified of the seller's appropriation of goods to the contract has been held sufficient to constitute assent to the appropriation (*Berkshire Cotton Mfg. Co.* v. *Cohen*, 236 N. Y. 364, 370; *Boiko & Co.* v. *Atlantic Woolen Mills, Inc.*, 195 App. Div. 207, affd. 234 N. Y. 583; *Turner-Looker Co.* v. *Aprile*, 195 App. Div. 706,

affd. 234 N. Y. 517; *Whitman Co.* v. *Witcombe,* 123 Misc. 117, 119; *Pignataro* v. *Gilroy,* [1919] 1 K. B. 459, Prof. Williston's comment thereon in 34 Harv. L. Rev. 748, quoted in *Whitman Co., Inc.,* v. *Witcombe, supra,* p. 119; and see, also, *Taylor* v. *Kurzrok,* 214 App. Div. 308, 314, and *International Cheese Co.* v. *Garra,* 114 Misc. 543, 545).

I cannot attribute to defendant an intent not to take and pay for the goods if they in fact complied with the contract; and under the authorities cited I hold that there has been such an appropriation of goods to the contract as has caused the property therein to pass, and that plaintiffs accordingly may maintain this action for the price.

I accordingly direct judgment for plaintiffs for $3,993 with interest from January 1, 1948, and costs.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.